HENDRICKS v. BLOCK.

Opinion delivered October 22, 1906.

1. CONSTITUTIONAL LAW—PRIVILEGES AND IMMUNITIES.—The act of April 1, 1901, prohibiting the running at large of any livestock within certain territory is not a violation of the equal privileges and immunities clause (art.2, § 18) of the Constitution of 1874. (Page 337.)

2. SAME—SPECIAL LAW.—The provision of the Constitution (art. 5, § 25) prohibiting the General Assembly from passing any special law "where a general law can be made applicable" is merely cautionary to the Legislature, and is not enforcible by the courts. (Page 337.)

3. SAME—DUE PROCESS.—An impounding act which imposes upon the owner of stock no damages or penalty, but only the reasonable cost of taking up, impounding and keeping the same, is not a deprivation of due process, although there may be no provision for a public officer or judicial proceeding to carry out the remedies which are authorized to be pursued. (Page 338.)

Appeal from Miller Circuit Court; *Joel D. Conway,* Judge; affirmed.

Appellant brought replevin before a justice of the peace against Block and another to recover certain hogs. Judgment went for defendants. On appeal to the circuit court the circuit judge, on a waiver of a jury, found the facts as follows:

"The plaintiff was during the month of April, 1905, a resident and citizen of Miller County, Arkansas, living in Garland Township, Miller County, Arkansas, on the west side and about half a mile from McKinney Bayou, and was the owner of the hogs claimed by him in this action, which he allowed to run at large, though he endeavored to restrain them from crossing said bayou and ranging on the east side thereof. The field of defendant lies east of McKinney Bayou, and is inclosed with a barbed wire fence constructed in all respects in compliance with section one (1) of an act of the Legislature of the State of Arkansas, entitled, "An act to make lawful a certain kind of fence in certain portions of Miller County," and approved April 1, 1901, and the inclosure of defendants was within that portion of Garland Township, in said Miller County, Arkansas, that lies east of McKinney Bayou.

"About the 20th of April, 1905, the defendants took up and penned on their enclosure the said hogs of plaintiff then found running at large in their said enclosure, and upon the following day notified plaintiff verbally that they, the defendants, had taken up said ten head of hogs, and thereupon plaintiff demanded of the defendants the possession of said hogs without making any tender to cover the expense of taking up or feeding said hogs. The defendants refused this demand of plaintiff unless he would pay them six or seven dollars for the damage claimed to have been done by said hogs, and the expense of keeping or feeding said hogs, which amount was not stated by the defendants. The plaintiff refused to pay the amount demanded. The fence around defendant's enclosure was not a prevention from the hogs entering the field of defendants at any place by going under said fence. The defendants were holding said hogs at the time of the institution of this suit for the purpose of disposing of them under

the provision of said act, and the reasonable expense of keeping said hogs was the sum of one dollar and fifty cents."

Plaintiff requested that the court declare that the act of April 1, 1901, was unconstitutional, and that he was entitled to possession of the hogs. The court, on the contrary, declared the act constitutional, and held further that "it was the duty of the plaintiff, upon finding the hogs impounded, to have tendered the defendants a sufficient amount to have covered the expense of taking up, feeding and caring for said hogs up to the date of the tender, and the fact that the defendants demanded pay for the damage done by said hogs, in addition thereto, did not relieve plaintiff from that duty, since, if a proper tender had been made, the defendant might have accepted same, and not have insisted on holding the hogs for the alleged damages, and in this case the law is with the defendants, and plaintiff is not entitled to recover."

Judgment was for defendant, and plaintiff appealed.

Sections one, two and three of the act of April 1, 1901, are as follows:.

Sec. 1. "That a fence constructed of stakes, posts or trees, firmly set in the ground not more than 16 feet apart, and strung with barbed wire or rails firmly attached thereto as follows towit:

"First. If of rails, to consist of five (5) or more rails, the top rail five feet and six inches from the ground; the bottom rail one foot and six inches from the ground, and the others regularly interspaced between them, *provided* a barbed wire or plank may substituted for any one or more of said rails.

"Second. If barbed wire, the top wire to be five feet from the ground; the second three feet and six inches from the ground; the third two feet and six inches from the ground, and the lowest wire eighteen inches from the ground, shall be a lawful fence for all purposes within the following described portions of Miller County, Arkansas, towit: [Here follows description]. *Provided,* any fence now established or hereafter to be constructed in said district which is or would be a lawful fence under the provisions of this act shall be a lawful fence in said territory.

Sec. 2. "It shall be unlawful for any swine, sheep or goat or any domestic animal or live stock of that kind or character

named to run at large within said limits, except upon the lands of the owner of such animals within said territory, and if any such animals be found at any time at large within said territory on lands other than such as may belong to or be under the control of owner of such animals, it shall be lawful for the persons or any of them owning or having control of the lands where such animals are found running at large to take up such animals and notify the owner of said animals, as soon as may be convenient within ten days, and on receiving such notice the owner of the animal taken up shall be entitled to possession thereof on payment to the taker up of all expenses incident to such taking up, including the expense of feeding and caring for such animals prior to their delivery to their owner.

Sec. 3. "If the owner of said animals failed to pay all of said expenses and remove said animals to their proper place within three days after receiving such notice of their being so taken up, or if the owner of said animals is unknown or is not found within ten days after such taking up, it shall be lawful for the person taking up said animals to advertise for five days the same for sale at public outcry to the highest bidder for cash in hands on the premises where taken up, by posting written or printed notices of sale in four public places of the vicinity, and out of the proceeds arising from such sale the said expenses of taking up, caring for, advertising and selling such animals shall first be paid, such expense money to be reserved by the taker-up and the remainder of such proceeds of sale shall be turned over to the owner of such animal immediately after such sales," etc.

*J. M. Carter,* for appellant.

1. The act of April 15, 1901 (p. 121), intended that the fence should be a *lawful* fence under the general fencing laws. Kirby's Digest, § 1386, 1405. Nor did it intend the act to apply to persons living outside the district, where it was lawful for stock to run at large. See § § 5 and 6. But, if it did, it is unconstitutional, because it grants special privileges to persons and property within the district. Kirby's Digest, § § 1386, 3958, 1408; art. 2, § 18, Const.

2. The act is repugnant to § 24, art. 5, Const. in that it supersedes the general law. 84 Ill. App. 426; 37 Ark. 568.

3. It violates § 8, art. 2, Const., by depriving a person of property without due process of law. For definitions of "police power," see 77 Minn. 483, 494; 8 Cyc. p. 863, and note; 30 S. W. 440; Cooley, Const. Lim. p. 432; 35 N. Y. p. 302.

4. The power of cities to impound and sell stock and the decisions sustaining same are not authorities sustaining this act. The Constitution, art. 12, § 3, authorizes the General Assembly to grant such powers. Kirby's Digest, § 5450. And this power is an exercise of the police power of the State. This act is not.

HILL, C. J. This appeal questions the constitutionality of the act of the General Assembly approved April 1, 1901, entitled "An act to make lawful a certain kind of fence in certain portions of Miller County." The first three sections are the ones under fire, and will be set out by the Reporter in the statement of facts.

The first point made is that the act is in contravention of section 18 of article 2 of the Constitution—the equal privileges and immunities clause. This contention was decided against the appellant in a similar case, *State* v. *Smith,* 71 Ark. 478.

The next point is that the act is repugnant to section 25, article 5, of the Constitution—the provision that no special law shall be enacted where a general law can be made applicable. From *Boyd* v. *Bryant,* 35 Ark. 69, to *Waterman* v. *Hawkins,* 75 Ark. 120, there has been a uniform holding that this provision is merely cautionary to the Legislature, and is not a provision enforcible by the courts.

The next allegation is that the act violates section 8 of article 2 of the Constitution in regard to the due process of law therein guarantied, in that no public officer is provided or judicial proceeding to carry out the remedies which are authorized to be pursued. Practically the same argument is made against this clause that was made against a city ordinance in *Ft. Smith* v. *Dodson,* 46 Ark. 296. That argument was met by a quotation from the Supreme Court of Kansas, which is therein approved, as follows: "When nothing is attempted to be imposed upon the owner of the stock as damages or penalty, but only the reasonable cost of taking up, impounding and keeping the same, and suffi-

80—21

cient notice is provided for, and the ordinance authorized by the city charter, it is believed that no court ever held the law or the ordinance founded thereon to be unconstitutional or invalid, although the sale may not be made under judicial process, although there may be no provision for a judicial investigation, except the general remedies to determine whether the law or the ordinance has been complied with, and although the notice provided for may not be a personal notice, but only a notice by publication or by posting."

This answers every objection that is urged to this section.

Counsel attempt to differentiate the decisions sustaining the powers of cities by ordinance to impound and sell stock from the authority of the General Assembly to authorize the same in a given portion of the State, and say that, in the first place, the powers of cities is derived from section 3 of article 12 of the Constitution, and in the second place the power given to the cities and towns is an exercise of the police powers of the State, whereas the statute under consideration is not.

Section 3 of article 12 of the Constitution is a mere general delegation to the Legislature of the authority to provide by general law for the organization of cities and their classification, and incorporated towns, and restrict their powers of taxation, assessment, borrowing money and contracting debts, so as to prevent the abuse of such powers, and it does not purport to confer upon the cities any power itself, nor give the General Assembly any authority to confer greater power upon cities than it may confer elsewhere. All of the power of the State, not withdrawn by the Federal or State Constitution, rests in the General Assembly, and the fact that the General Assembly has delegated some of that power to the cities does not alter the nature of the power. These decisions, like the Dodson case and many others from other States along the same line, are decisions, not on a question of delegated power, but on a question of due process, and exactly the same reason will sustain them, whether the power is delegated to a city and exercised by it, or whether it comes from the primary source of power, the General Assembly of the State itself.

As to the second contention on this ground, that it is an exercise of the police power of the State, that depends on the definition of "police power." Broadly speaking, the police power

is all of the power of the State which has not been delegated to the general government and which is not restricted by the Constitution. While it is true that there are many definitions of that power and differentiations of the powers of the State, yet it is wholly immaterial what a power may be called, so long as it is known to exist. The General Assembly has all power for general legislation which is not delegated to the general government and which is not inhibited by the Federal or State Constitution. This is not an inhibited matter.

Judgment affirmed.