LOUISIANA & ARKANSAS RAILWAY COMPANY *v.* STATE.

Opinion delivered December 23, 1907.

1. POLICE POWER—REASONABLENESS OF STATUTE.—Whether the legislative exercise of the police power, including the regulation and control of railroads and other public-service corporations, is reasonable is a question for the courts to determine. (Page 18.)

2. RAILROADS—STATUTORY REQUIREMENTS AS TO STATIONS.—While the Legislature has the general power to require railroad companies to establish and maintain stations at designated points, such power must be exercised reasonably and with due regard to the rights of such companies. (Page 20.)

3. SAME.—A legislative determination that a station should be erected and maintained at a certain point is conclusive unless the courts can declare, as a matter of law, that such determination is arbitrary and unreasonable. (Page 21.)

4. SAME.—Upon the trial of an indictment against a railroad company for failure to build and maintain a station at a certain point, it was error to reject a special plea supported by evidence to the effect that there was no public necessity for the maintenance of a station at such place; that the surrounding country was sparsely settled; that there was a heavy natural grade there which would render it expensive to build side tracks, and would add greatly to the danger of accidents in stopping trains; that there was a flag station two and one-half miles north of the designated point and a regular station four and one-half miles south; that these two stations provided ample transportation facilities to the people living near; and that the cost of erecting and maintaining a station at that place would greatly exceed the revenues which would accrue from its business. (Page 21.)

5. SAME—COST OF STATION.—The fact that the cost of erecting and maintaining a station at a particular place would greatly exceed the revenues to be derived from the business at that place would not necessarily render the statute requiring its maintenance unenforceable, though it would be a matter to be considered in determining whether or not the requirement was arbitrary and unreasonable. (Page 23.)

6. SAME—REASONABLENESS OF STATUTE QUESTION FOR COURT.—The question whether a statute requiring a station to be erected at a particular place is reasonable is a question to be determined by the court, which should call to its aid all the available facts and information concerning the public necessity for such station, the cost of erecting and maintaining it, and any other facts tending to show whether the requirement is reasonable. (Page 24.)

7. SAME—REASONABLENESS OF STATUTE DETERMINED HOW.—In determining whether a statute requiring a station to be erected and maintained at a certain place is reasonable the court is not bound by the facts presented or agreed upon by the parties, but should possess itself of all the information obtainable upon the subject. (Page 24.)

8. INDICTMENT—EFFECT OF ERROR AS TO NAME OF ACCUSED.—Under Kirby's Digest, § 2232, providing that "an error as to the name of the defendant shall not vitiate the indictment or proceedings thereon," etc., where there was an error in the name of the defendant railway company, it was proper, upon discovering the error, to order that the subsequent proceedings under the indictment should be in the true name of defendant. (Page 24.)

9. RAILROAD—INDICTMENT.—Where an act requiring a certain railway company to build a station at a designated place states that a failure of the company to comply with its terms shall subject it to indictment and fine upon the company's default, it was proper to proceed against it by indictment. (Page 25.)

10. SAME—VENUE OF OFFENSE.—Where an act provided that a railway company should build a station at a certain point, and that a failure to comply with the act should constitute a misdemeanor, the offense, if any, was committed in the county in which the proposed station was located, although the domicil of the company was in another county. (Page 25.)

Appeal from Columbia Circuit Court; *Charles W. Smith,* Judge; reversed.

### STATEMENT BY THE COURT.

The General Assembly of this State in 1905 passed an act entitled, "An act locating and establishing a regular station and requiring the building and construction of a depot, and the maintaining thereof, at Snow Crossing, in Columbia County, Arkansas, by the Louisiana & Arkansas Railroad Company, and requiring trains of cars, passenger and local freight on said railroad, to stop there and receive passengers and freight, and prescribing penalties and damages for violations" of the act. (Acts 1905, p. 265.) The act, in addition to requiring the construction and maintenance of the depot at Snow Crossing, provided that a failure on the part of the company to comply with

the provisions of the act should constitute a misdemeanor and be punishable by fine.

The company failed to construct a station or depot, as required by the act in question, and the grand jury of Columbia County in 1906 returned an indictment against it, alleging in substance that the defendant company failed to maintain a regular station of any kind at Snow Crossing. The indictment named the Louisiana & Arkansas Railroad as defendant. Summons was served in Columbia County on a station agent of appellant, Louisiana & Arkansas Railway Company, and appellant appeared and filed a special plea in abatement, and motion to quash the indictment on the ground that the charter of the Louisiana & Arkansas Railroad had expired, and that appellant company was not amenable to the indictment against that company. The court overruled the plea and motion, and ordered that subsequent proceedings under the indictment be in the name of the Louisiana & Arkansas Railway Company. Appellant also demurred to the indictment, and the same was overruled. It thereupon filed a general plea of not guilty and in addition a special plea containing the following statements:

"It states that the country around Snow Crossing is principally wild and uncultivated and sparsely inhabited; that the cleared land is devoted principally to the raising of cotton, which cotton is hauled to the neighboring towns of Magnolia and Lewisville, where the farmers purchase their supplies; that the station of Experiment is situate about one and one-half miles north of Snow Crossing, and that passengers and freight are received and discharged at such station; that the station of Taylor is situate four and one-half miles south of Snow Crossing on the line of said railway company; that there is a depot building and telegraph operator, with passenger and freight agent, employed at said station; that the two stations of Experiment and Taylor furnish to the inhabitants contiguous to Snow Crossing ample facilities to board the trains as passengers or to ship their freight, and that to force the railroad to maintain a regular station at Snow Crossing would require three stations maintained by said railway company within seven miles in a sparsely settled region; that to erect a station at Snow Crossing would cost approximately $1,000; that to maintain same would cost $75 to

$100 per month, and that the receipts from freight and passengers at such station would meet only a small proportion of the cost of maintainance, and that such station would have to be operated at a monthly loss to the railway company; that Snow Crossing is located at the foot of a very heavy grade on the line of said Louisiana & Arkansas Railway Company, the heaviest grade at any point on said line; that, because of the topography of the country, it would be impracticable, except with very great expense, to provide side tracks and passing tracks at said point as required by said act No. 105, and that to attempt to comply with said act by stopping all freight and passenger trains would, by reason of said hill and steep grade, add greatly to the danger of accidents to passengers and employees upon said railway."

The special plea was stricken out by the court on motion of the State.

The case was tried before the court, sitting as a jury, and the State introduced proof establishing the fact that appellant had not complied with the requirements of the statute. Appellant offered to introduce evidence to sustain the allegations of its special plea, but the court refused to hear the evidence. The court then made a finding that the defendant was guilty as charged in the indictment, and assessed a fine of $25 against it, and the defendant appealed.

The Attorney General confesses error of the trial court in refusing to consider the appellant's special plea.

*Moore & Moore*, for appellant.

1. If this case is to be treated as a criminal proceeding, the court erred in overruling appellant's demurrer to the indictment. Being purely a statutory offense, the indictment is defective in failing to set out the offense in the language of the statute, and with sufficient certainty, and in not charging that the defendant failed "to *build* and maintain at Snow Crossing" a regular station, etc. 47 Ark. 488. The indictment is bad because brought against the Louisiana & Arkansas Railroad and prosecuted against the Louisiana & Arkansas Railway Company. The offense charged being one of omission to perform a duty, the indictment is bad in failing to allege that Columbia County was

the domicil or principal place of business of defendant, or that it had any agent or employee in that county charged either with the duty or power of performing that duty.  42 L. R. A. 518.

2.  Treating this as a civil proceeding, as it seems it should be regarded, the indictment took the place of a complaint.  55 Ark. 206.  And the defendant had a right to file an answer setting up all its grounds of defense.  The court, therefore, clearly erred in striking out all of the answer except the plea of not guilty.  Under the first ground of defense, the plea of not guilty, the defendant should have been permitted to prove that it was a different corporation from the Louisiana & Arkansas Railroad, which had ceased to exist; and under the second ground defendant should have been permitted to introduce evidence to show that its domicil was in another county, etc. · *Supra.*  The act is repugnant to art. 14, § 1, Const. U. S., and art. 2, § 8, Const. Arkansas, which are pleaded in the third paragraph, and the court erred in striking this paragraph out, and in excluding testimony offered to prove the facts therein alleged.  While the Legislature may, within reasonable limits, regulate public service corporations, and so legislate as to prevent extortion or undue charges, and to promote the safety, health, etc., of the public, yet such regulation must in fact be reasonable, and a common carrier may not, at the caprice or whim of the Legislature, be required to expend large sums of money without hope of return, for the benefit of a few, in the erection and maintenance of a depot, when ample facilities have already been provided by the carrier.  The convenience of the entire public, and not the limited few, is to be considered, as also the loss entailed on the carrier by such legislation.  The reasonableness of such legislation is a question for the courts.  The power reserved to alter or amend the charter of a corporation does not extend to taking its property either by confiscation or indirectly by other means.  154 U. S. 362, 398-9; 173 U. S. 685; 197 U. S. 287; 193 U. S. 52; 142 U. S. 492; 52 Ark. 410.  Art. 12, § 6, Const. Arkansas, itself provides that legislative control over corporations shall be exercised "in such manner, however, that no injustice shall be done to the incorporators."  When a railroad company has furnished proper and reasonable accommodations to a locality, considering the amount and character of the

business done there, then any further interference by the State causing interstate trains to stop is a violation of the interstate clause of the Constitution. 203 U. S. 335.

*William F. Kirby,* Attorney General, and *Dan'l Taylor,* Assistant, for appellee.

1. An indictment is not vitiated by a misnomer if the accused is charged in the name by which he is usually and generally known; and the error in accusing the Louisiana & Arkansas Railroad is not such a misnomer as will invalidate the indictment. The name was sufficient to identify the corporation sought to be charged. 1 Bishop, Crim. Prac. § § 682-686; 16 Mass. 141; 55 Ark. 200; 105 Ga. 808; 68 Ia. 593; 30 Minn. 522; 90 Ga. 463. And. the court properly made an order directing that the indictment be taken and held to be against the Louisiana & Arkansas Railway Company, etc. 30 Ark. 166; Kirby's Digest, § 2232. There was no error in presenting the indictment in Columbia County, where the act required the duty to be performed, rather than in the county of appellant's domicil. The single case cited by appellant in support of its contention has not been followed nor approved in any other case, and to uphold that doctrine would in great measure render the State powerless to enforce acts regulating foreign corporations doing business in the State.

2. Confessed error in oral argument, in striking out appellant's special plea; but contends in his brief that the act requires nothing which would entail a useless expenditure of money, or amount to a confiscation of property, or deprivation thereof without due process of law, and that the court properly refused the tender of evidence affecting the constitutionality of the act upon the ground of unreasonableness. Citing 26 Am. & Eng. Ec. of L. (2 Ed.), 497-8.

*S. H. West,* and *Bridges, Wooldridge & Gantt, amici curiae.*

It is within the province of the lawmaking power to determine when the exigency exists calling into exercise the police power; but what are the subjects of its exercise is clearly a judicial question. It is well settled that the exercise of the police power by the Legislature must be reasonable, and the

question whether or not it is reasonable is for the courts to determine. Freund on Police Power, § 63; *Id.* §.§ 549, 550; 154 U. S. 362; 164 U. S. 578; 173 U. S. 684; 79 N. W. 510; 75 N. E. 268; 107 N. W. 500; 51 S. E. 793; 70 Ill. 191; 67 Ill. 37; 17 App. Cas. (D. C.) 264; 180 Mass. 36; 24 N. E. 642; 2 Tiedeman, St. & Fed. Control of Pers. & Prop. 987; 103 Fed. 620; 126 Fed. 29; 142 Fed. 552; 95 U. S. 465; 92 U. S. 259; 134 U. S. 418; 152 U. S. 133; 156 U. S. 649; 198 U. S. 45; 136 N. Y. 577; 144 N. Y. 529; 145 N. Y. 32; 153 N. Y. 188; 157 N. Y. 116; 76 Ark. 197; 64 Ark. 424. The defendant should have been permitted to offer proof as to the reasonableness of the statute upon which the indictment was based, and to show that the demand made upon it was unreasonable and not required by the public welfare.

McCULLOCH, J., (after stating the facts.) The principal question involved in this appeal is whether or not a special act of the Legislature requiring a railroad company to construct and maintain a station at a given point on its line is subject to review by the courts; whether the reasonableness or unreasonableness of such legislation may be presented to the courts for review as a judicial question, or whether the courts are bound to accept as final the determination of the Legislature that there is a public necessity for a station at the place named in the act, and that the requirement upon the railroad company to construct and maintain one there is reasonable. Upon this precise question there is scarcely a precedent in the adjudged cases, and it is well-nigh a question of first impression.

It is well settled that the legislative exercise of the police power, including the regulation and control of railroads and other public service corporations, must be reasonable; and whether or not such legislation is reasonable is a question for the courts to determine. *Wisconsin, M. & .P. Rd. v. Jacobson,* 179 U. S. 287; *Lake Shore, etc. Ry. Co.* v. *Smith,* 173 U. S. 684; *St. Louis & S. F. Ry. Co.* v. *Gill,* 156 U. S. 649; *Smyth* v. *Ames,* 169 U. S. 466; *Minn. & St. L. Ry. Co.* v. *Minnesota,* 186 U. S. 257; *Atlantic Coast Line Rd. Co.* v. *North Carolina Corp. Com.,* 206 U. S. 1.

An interesting and instructive discussion on the subject is found in the opinion of Mr. Justice White in the recent case

of *Atlantic Coast Line Rd. Co.* v. *North Carolina Corp. Com.,
supra,* which perhaps contains the latest utterances of that
court on the subject. That case involved the action of a com-
mission, and not a regulation by direct legislation. It is there said:
"As the public power to regulate railways and private right
of ownership of such property co-exist, and do not the one
destroy the other, it has been settled that the right of owner-
ship of railway property, like other property rights, finds pro-
tection in constitutional guaranties, and, therefore, wherever
the power of regulation is exerted in such an arbitrary and
unreasonable way as to cause it to be in effect not a regulation
but an infringement upon the right of ownership, such an exer-
tion of power is void because repugnant to the due process and
equal protection clauses of the 14th Amendment. * * * In
coming to consider the question just stated it must be borne in
mind that a court may not, under the guise of protecting private
property, extend its authority to a subject of regulation not
within its competency, but is confined to ascertaining whether
the particular assertion of the legislative power to regulate has
been exercised to so unwarranted a degree as, in substance and
effect, to exceed regulation, and to be equivalent to a taking
of property without due process of law, or a denial of the
equal protection of the laws."

In Tiedeman, in his work on State and Federal Control of
Persons and Property (vol. 2, p. 987) sums up the established
doctrine as follows:

"It is a judicial question whether a particular regulation
is a reasonable exercise of police power. The public necessity
of the exercise of the police power in any case is a matter ad-
dressed to the discretion of the Legislature; but whether a
given regulation is a reasonable restriction upon personal rights
is a judicial question."

The authorities cited above deal with the question of judi-
cial review either of general statutes passed in the exercise of
the public powers or of the exercise by boards or commissions
of the powers delegated to them by such general statutes; they
do not reach to the question of judicial review as to the reason-
ableness of a special statute passed by the Legislature in the
exercise of its control over public service corporations, requir-

ing the corporation to do a certain thing, such as the construction and maintenance of a station at a particular place on its line.

That the Legislature has the general power of supervision of railroads, and the power to require them to establish and maintain stations at points designated by the Legislature, can not be doubted. It is equally true, however, that such power must be exercised reasonably and with due regard to the rights of the corporations, for they have rights which legislatures as well as courts must respect. But who is to be the judge whether or not the power has been reasonably exercised by the Legislature? Is the Legislature to be the sole judge of the propriety of its action in the matter, or can the courts review the action and decide whether the power was exercised reasonably or unreasonably and arbitrarily? If the Legislature determines that the public convenience or necessity reasonably demands the maintenance of a station at a given place, and passes an act requiring the railroad company to establish and maintain one there, is that determination conclusive of the necessity for a station at that place, or can the courts review that determination? We think the power of the Legislature in this respect, and the degree of conclusiveness to be accorded to its determination of the necessity and propriety of its action, are the same as in other instances where the Legislature is to determine the facts which call for direct legislation. The greatest latitude should be given to the law-making body in determining the necessity for its action; but that power must not be exercised arbitrarily and without reason. The power of the Legislature over the subject of special taxation for local improvements is unquestioned. The Legislature has the power to determine for itself the boundaries of a locality to be benefited, the extent of the benefits and the amount of tax to be levied on each piece of property; but this court holds that that power, when arbitrarily and unreasonably exercised, is not beyond judicial control. *Coffman* v. *St. Francis Drainage Dist.*, 83 Ark. 54.

We approve the doctrine stated by the Supreme Court of the United States in *Norwood* v. *Baker*, 172 U. S. 269: "But the power of the Legislature in these matters is not unrestricted.

There is a point beyond which the legislative department, even when exerting the power of taxation, may not go inconsistently with the citizens' right of property." That principle is applicable here. When the Legislature passes a special act requiring the doing of a certain thing, such as the establishment and maintenance of a station at a given place by a railroad corporation, there may be a judicial question presented whether or not a real necessity exists for the doing of the thing in order to reasonably serve the public convenience. It is a question primarily for legislative determination, and that determination should not be disturbed by the court unless the power has been exercised arbitrarily and without reason. In other words, the legislative determination should be and is conclusive unless it is arbitrary and without any foundation in reason and justice. There may be cases where the power is exercised so arbitrarily and unreasonably that the court should declare, as a matter of law, that the Legislature exceeded its power, and that the legislative determination should be disregarded. This principle is, we think, clearly recognized by the decisions of the Supreme Court of the United States in the cases involving the validity of legislation directly fixing rates for transportation of passengers and freight. *Dow* v. *Beidelman,* 125 U. S. 680; *St. Louis & S. F. Rd. Co.* v. *Gill,* 156 U. S. 649; *Chicago & G. T. Ry. Co.* v. *Wellman,* 143 U. S. 339; *Smyth* v. *Ames,* 169 U. S. 467; *Covington & L. Turnpike Co.* v. *Sandford,* 164 U. S. 578.

The application of the principle is necessarily somewhat different in the case of a general rate-making statute from a statute imposing duties like that imposed in this case, but the principle is the same.

This brings us to a consideration of the questions whether or not the appellant in this case offered to bring to the attention of the court facts sufficient to show that there is no public necessity for a station at Snow Crossing, and that the requirements of the legislation in that respect are so arbitrary and unreasonable as to demand a judicial review so as to relieve the railroad company from compliance therewith.

The rejected evidence tended in substance to show that there was no public necessity at all for the maintenance of a station at Snow Crossing; that the land around that place,

which is not a point of intersection of two railroads, but is only the crossing of a country road over the railroad, is principally wild, uncultivated and sparsely settled; that there is such a heavy natural grade at that point on the road as would not only render it very expensive to build side-tracks, but would add greatly to the danger of accidents in stopping trains; that there is now a flag station on appellant's line two and a half miles north of Snow Crossing, and also a regular station four and a half miles south of Snow Crossing, where there is a depot building and where a telegraph operator and passenger and freight agent is kept; that these two stations provide suitable, convenient and ample transportation facilities to the people near Snow Crossing; and that the cost of erecting and maintaining a station at that place would be greatly in excess and out of proportion to the revenues which could possibly accrue from the business at that place, and that the station would have to be operated at a monthly loss to the company.

Now, this evidence tended to show that there is no public necessity for a station at the place named, and the court should have heard and considered it for the purpose of determining whether or not the statute was a valid exercise of power by the Legislature. As we have already stated, the authority of the Legislature to regulate railroad companies and to compel them to establish stations and build depots whenever the public necessity and convenience requires is not disputed; and, as the Legislature has that right and power, the presumption is that it exercised it in a proper case, and that the public convenience required the station at that place. But that presumption was not conclusive. The burden to show that there was no necessity for a station at that place was on the company, and it had the right to be heard on the question whether the act of the Legislature was an arbitrary and unreasonable exercise of the legislative power, which would result in putting the company to useless expense. As the Legislature had no power to confiscate or deprive the company of its property where no public necessity requires it, it is plain, both from reason and authority, that it had no right to arbitrarily require a railway company to establish stations at places not required by public convenience or necessity. So if, after considering all

the facts and circumstances, giving due consideration to the determination of the Legislature and resolving every doubt in its favor, the court should be convinced that there was no public necessity for a station there, and that the result of enforcing the act would be to put the defendant to large expense, without any corresponding benefit either to it or the public, then the Legislature had no right to make such requirement, and the court should so declare as a matter of law.

The utmost force must be given to the legislative determination of the necessity for a station and the reasonableness of requiring the company to erect and maintain one; but appellant presented a question for judicial review, and for the court to refuse a consideration would be to deny it the equal protection of the law, and would, in effect, be depriving it of its property without due process of law.

The fact, if proved, that the cost of erecting and maintaining the station would be greatly in excess of and out of proportion to the revenues to be possibly derived from the business at that place does not of itself render the requirement unenforceable. The fact, however, would be important for the court to consider in determining whether or not the requirement was arbitrary and unreasonable, and whether or not there is any corresponding necessity for a station.

The Supreme Court of the United States in the case of *Atl. C. L. Ry. Co.* v. *North Carolina Corp. Com., supra,* said of this particular question: "As the primal duty of a carrier is to furnish adequate facilities to the public, that duty may well be compelled, although by doing so as an incident some pecuniary loss from rendering such service may result. It follows, therefore, that the mere incurring of a loss from the performance of such duty does not, in and for itself, necessarily give rise to the conclusion of unreasonableness, as would be the case when the whole scheme of rates was unreasonable under the doctrine of *Smyth* v. *Ames, supra,* or under the concessions made in the two propositions we have stated. Of course, the fact that the furnishing of a necessary facility ordered may occasion an incidental pecuniary loss is an important criterion to be taken into view in determining the reasonableness of the order, but it is not the only one."

But how, it may be asked, is the question to be presented and determined whether the statute is a proper exercise of legislative powers and valid—is the validity of the statute a question of law or one of fact? We answer that it is a question of law for the determination of the court. The court may, however, and should call to its aid all the available facts and information concerning the public necessity for the maintenance of a station at that place, the cost of erecting and maintaining it, as well as any other facts tending to show whether there is a necessity for a station, and whether the requirement placed upon the company to build and maintain it is a reasonable one. But when the court becomes convinced upon the question whether the legislative power has or has not been reasonably exercised, then it should declare whether or not the statute is valid. This should be done by the court as a preliminary question, before submitting to the jury the question of fact whether or not the terms of the statute had been complied with. The special plea offered by appellant should not have been stricken out, but should have been treated as a preliminary plea addressed to the court raising the question of the validity or invalidity of the statute, and bringing to the attention of the court the facts calling for an investigation.

The court is not bound by the facts presented by appellant in its attack upon the validity of the statute. It should possess itself of all the information obtainable before it undertakes to set aside the enactment of the Legislature, for the public is interested in the question of validity of statutes, and the court should not confine itself in its investigation to the facts presented or agreed upon by the parties to the particular litigation in which the validity of the statute is called in question *Chicago, &c., Ry. Co.* v. *Wellman,* 143 U. S. 339.

A number of other points are discussed, but we find no other error in the rulings of the court.

The act required the "Louisiana & Arkansas Railroad Company" to establish the station, while the correct name of the defendant is the "Louisiana & Arkansas Railway Company." But, as Snow Crossing is a point where defendant's railroad passes over a public highway, and as no other railroad company owns or operates a railroad at that point, it is evident

that the defendant is the company referred to in the act. The indictment was returned against the Louisiana & Arkansas Railroad, but the court found that the indictment was directed against appellant, and made an order that the subsequent proceedings under the indictments should be in the true name of appellant. This course is expressly authorized by statute where an error occurs in stating in an indictment the name of the party accused. Kirby's Digest, § 2232.

The act expressly states that a failure of the company to comply with its terms shall subject it to indictment and fine, and we think that the procedure by indictment was proper.

It is contended that appellant had its domicil in another county, where the executive officers transacted the business of the company; that, as a corporation can act only through its officers, the omission to comply with the terms of the statute occurred in the county of the domicil of the corporation, and not in Columbia County. We think, however, that, as appellant was operating its line of railroad through Columbia County, and the Legislature required it to build the station at a point in that county, the offense, if any, was committed in that county. Any other view would obstruct, and perhaps in some cases entirely prevent, the enforcement of legislative enactments exercising the police power in the regulation of public-service corporations.

It is contended that, under the peculiar language of the statute, the defendant can not be punished by more than one fine for the failure to establish the station; but that point is not before us in this case.

Reversed and remanded for further proceedings.