# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS

---

MISSOURI & NORTH ARKANSAS RAILROAD COMPANY *v.* STATE.

## Opinion delivered June 28, 1909.

1. RAILROADS—FENCE—CONSTRUCTION OF STATUTE.—Acts 1905, c. 165, requiring the St. Louis & North Arkansas Railway Company to fence its right of way in certain counties, is binding upon a company which purchased the railroad from the above company. (Page 3.)

2. CONSTITUTIONAL LAW—SPECIAL ACTS.—The Constitution permits special legislation when general laws cannot be made applicable, and the Legislature is the sole judge of the necessity for a special statute. (Page 3.)

3. SAME—REASONABLENESS OF STATUTE.—While the reasonableness of the legislative exercise of police power is to be determined by the courts, the necessity for its exercise in a given instance is addressed to the discretion of the Legislature. (Page 4.)

4. RAILROADS—VALIDITY OF FENCING ACT.—A statute requiring a particular line of railroad running through a certain locality to fence its right of way is not unconstitutional in singling out such railroad and requiring it to do what other railroads in the State are not required to do. (Page 4.)

5. SAME—FENCING ACT—PENALTY.—Under Acts 1905, c. 165, § 5, imposing a penalty upon the St. Louis & North Arkansas Railway Company for failure or refusal to comply with its provisions, the penalty is prescribed for failure or refusal to comply with any of the requirements of the act, one of which is to keep the fence and stockguards in good repair. (Page 6.)

Appeal from Boone Circuit Court; *Brice B. Hudgins,* Judge; affirmed.

*Moore, Smith & Moore,* for appellant.

1. The act of April 13, 1905, is unconstitutional, as being contrary to section 1, art. 14, of amendments to the Constitution of the United States. 47 Ark. 330; 61 Kans. 146; 125 U. S. 181; 115 Mo. 307; 2 Yerger 260-270; 134 U. S. 232-7;

Cooley's Principles of Const. Law, 251; 183 U. S. 79; Cooley's Const. Lim. (5 Ed.) 484-6; 118 U. S. 356-369-70.

2. The indictment and information are for failure to keep the fence in repair and not for failure to build, and neither should have been sustained.

*Hal L. Norwood,* Attorney General, and *C. A. Cunningham,* Assistant, for appellee.

1. It is conceded that statutes compelling railroads to fence their rights of way are proper exercises of the police power. 129 U. S. 26; 149 *Id.* 364; 115 *Id.* 512.

2. The act is not unconstitutional as special discriminatory legislation, nor does it deny appeal equal protection of the law. 113 U. S. 703; 165 *Id.* 157; 129 *Id.* 29; 177 *Id.* 585.

3. The right to impose double damages is unquestioned. 115 U. S. 512; 165 *Id.* 157.

4. Double damages are not the only penalty for non-compliance with the act. Section 4. It also provides a fine for not keeping the fence in repair. 115 U. S. 572.

McCulloch, C. J. The Missouri & North Arkansas Railroad Company appeals from judgments of the circuit court of Boone County in two cases, assessing penalties against it for alleged violations of a statute enacted by the Legislature in 1905 requiring the St. Louis & North Arkansas Railway Company to fence its right of way in the counties of Carroll, Boone and Searcy, in this State. The appellant is a railroad corporation, and succeeded to all the rights, franchises and property of said St. Louis & North Arkansas Railway Company by purchase from a commissioner of the United States Circuit Court in a mortgage foreclosure suit.

The statute was enacted in 1905, but was made to take effect on September 1, 1906, and appellant received its deed of conveyance from the commissioner on June 26, 1906. The first section of the statute reads as follows: "Sec. 1. That the St. Louis & North Arkansas Railway Company is hereby required to fence its right of way in the counties of Carroll, Boone and Searcy, as hereinafter provided."

The second section requires that the fence shall be built on both sides of the roadbed, so as to prevent stock from crossing the track, and specifies how the fence shall be constructed. Sec-

tion 3 requires the company to make gates at private crossings and stockguards at public crossings, and further provides that the company shall not be required to fence the track in cities or towns or at places where natural barriers render it impossible for stock to go upon the track. Section 4 requires the company to keep the fence and stockguards in good repair, and makes it liable for double damages in case stock is injured or killed on the track when the fence is not in good condition, but provides that when the fence is kept in good repair the company shall not be liable for killing or injuring stock.

Section 5, which prescribes the penalty, is as follows: "That if said railroad company shall fail, refuse or neglect to comply with the provisions and requirements of this act, it shall be deemed guilty of a misdemeanor, and, upon conviction before any court of competent jurisdiction, be fined not less than fifty dollars nor more than five hundred dollars, and every day said railroad company shall fail to comply with the provisions of this act shall be a separate offense." Acts 1905, c. 165.

1. The statute in question took effect after the appellant became the owner of the line of railroad described herein. It cannot well be contended, and is not contended here, that the statute, if valid, does not apply to appellant as the owner of the railroad. The statute was aimed at the line of railroad described, and not at the particular corporation which owned and operated it. It is in the nature of a police regulation applicable to a certain line of railroad.

2. It is contended that the statute is violative of that part of the 14th Amendment to the Constitution of the United States which forbids that a State shall "deny to any person within its jurisdiction the equal protection of the laws." Corporations fall within this provision, and are entitled to its protection. It is insisted that the statute singles out one line of railroad, and imposes upon the owner of it the unequal burden of fencing the track when similar burdens are not placed on other railroad companies. Decisions of the Supreme Court of the United States are relied on, holding that States cannot, by arbitrary classification based upon no difference which bears a reasonable and just relation to the act or business regulated, place burdens upon one class of persons not shared by others. *Gulf, C. & S. F. Ry.*

*Co.* v. *Ellis,* 165 U. S. 150; *Cotting* v. *Kansas City Stock Yards Co.,* 183 U. S. 79.

In the Cotting case, *supra,* a statute of Kansas was considered which, though general in terms, was found to apply only to a single company engaged in operating stock yards. The statute attempted to regulate the charges of the company, among other regulations, and the court held that the classification was arbitrary and unjust, and denied to that company the equal protection of the laws. In that case the regulation of rates, etc., was found to be such as would have applied to any other company engaged in similar business, and that the classification was not based upon any distinction between the business of that company and that of other companies in the same business.

The statute now under consideration falls within a different principle. It is a special act, applicable to a given locality; that is to say, to a particular line of railroad running through a certain locality. It is purely local in its operation. The selection of this line of railroad is necessarily the selection of a given territory over which the statute is to operate, and it implies a determination by the lawmakers of the question of necessity for such provision as a protection to the property along that particular route. Now, the Constitution of this State permits special legislation when general laws cannot be made applicable (Const., art. 5, § 25), and this court has repeatedly held that the Legislature is the sole judge of the necessity for a special statute. *Boyd* v. *Bryant,* 35 Ark. 69; *Davis* v. *Gaines,* 48 Ark. 370; *Carson* v. *Levee District,* 59 Ark. 513; *St. Louis S. W. Ry. Co.* v. *Grayson,* 72 Ark. 119; *Waterman* v. *Hawkins,* 75 Ark. 120; *Hendricks* v. *Block,* 80 Ark. 333.

The legislative exercise of the police power must be reasonable, and whether or not such legislation is reasonable is a question for the courts to determine; but the necessity for the exercise of the power in a given case is a matter addressed to the discretion of the Legislature. *Louisiana & Ark. Ry. Co.* v. *State,* 85 Ark. 12; 2 Tiedeman on State and Federal Control, p. 987.

It is not contended that a statute requiring railroad companies to fence their tracks is not a proper exercise of the police power, nor that it places an unreasonable or unnecessary burden upon the appellant company in this instance to fence its track.

The only complaint is that this company should not be singled out and compelled to do that which other railroad companies in the State are not required to do. The answer which we make to the contention is that the Legislature has determined, it is presumed, after due investigation, that the conditions are such along the route of this railroad that the track should be fenced in a particular manner, pointed out in the statute, for the protection of live stock and, maybe, for the better security of human life, in the operation of trains. The particular reasons which prompted the Legislature in arriving at this decision we are not called on to inquire into. The fact that there are other railroads in that portion of the State, and that another railroad traverses one of the counties mentioned in the statute, does not stamp the enactment as an arbitrary classification. Different conditions, calling for different regulations, may exist in the same county, and, as we have already said, the Legislature alone can inquire into and determine the necessity of putting into force a police regulation in a given locality. The Supreme Court of the United States in *Erb* v. *Morasch*, 177 U. S. 585, has, we think, announced the principle which controls in this case. There the court upheld, as a valid exercise of police control, an enactment regulating the speed of trains on all railroads save one in Kansas City. The court said: "If there were nothing in the record beyond the mere words of the ordinance, we are of the opinion that the contention could not be sustained, because it is obvious on a moment's reflection that the tracks of different railroads may traverse the limits of a city under circumstances so essentially different as to justify separate regulations. One may pass through crowded parts, crossing or along streets constantly traveled upon by foot passengers and vehicles, while others may pass through remote parts of the city, where there is little danger to individuals or carriages. One may pass through such parts of the city as will prevent its tracks from being fenced, and where it is not in fact fenced, while another may pass through parts which will permit the fencing of the tracks, and where the tracks are in fact fenced. Under those circumstances, a different regulation as to the matter of speed would be perfectly legitimate, and it could not be held that the classification was arbitrary or without reasonable reference to the conditions of the several roads. With the presump-

tion always in favor of the validity of the legislation, State or municipal, if the ordinance stood by itself, the courts would be compelled to presume that the different circumstances surrounding the tracks of the respective railroads were such as to justify a different rule in respect to the speed of their trains."

3. The track was fenced by the St. Louis & North Arkansas Railroad Company before the appellant acquired title to the property, and in each of the two cases before us the appellant is charged with having permitted the fence to remain out of repair so that its condition was not such as the statute requires. It is urged that the penalty applies only to the failure to fence the track, and not to failure or refusal to repair it so as to keep it in the condition required by the statute. We construe the act to prescribe a penalty for failure or refusal to comply with *any* of the requirements of the act; and one of the requirements is to keep the fence and stockguards in good repair. A separate penalty is prescribed for each day's failure or refusal to comply. The statute measures the offense by the period of time, viz: by the day, and not by the number or extent of breaches.

The judgment in each case is affirmed.