St. Louis Southwestern Railway Company v. State.

Opinion delivered February 6, 1911.

1.  Railroads—establishment of depots—legislative discretion.—The Legislature has primarily the right to determine whether the public necessity and convenience require the establishment of a railway depot at a given point, and the courts will not disturb that determination unless it is clearly shown that such requirement is unreasonable and arbitrary. (Page 475.)

2.  Same—necessity for depot.—In determining whether a depot is needed at a certain point the mere fact that the establishment and maintenance of such depot would greatly exceed the revenues that might be derived therefrom should be considered, though this would not be controlling. (Page 476.)

3.  Same—case stated.—Where there were three store houses at a certain point, and 20 families living in the immediate vicinity, with 100 families living within six or seven miles, and where there was a postoffice, and flag station with average monthly freight and passenger receipts of $150, it was not unreasonable to require the railway company to build a depot at an expense of $900, the maintenance of which would be about $75 per month. (Page 476.)

4.  Statutes—special legislation.—Under art. 5, § 24, Const. 1874, providing that "in all cases where a general law can be made applicable no special law can be enacted," the Legislature is the sole judge whether provision by a general law can be made applicable in a particular case. (Page 477.)

5.  Same—notice of special legislation.—Under art. 5, § 26, requiring publication of notice of local and special bills, the Legislature is the sole judge whether such requirement has been complied with. (Page 478.)

6.  Railroads—power of state to require building of depots.—A statutory requirement that a depot be established at a certain point upon a railroad engaged in interstate commerce is not a regulation of such commerce, but is an exercise of the State's police power. (Page 478.)

Appeal from Ouachita Circuit Court; *George W. Hays,* Judge; affirmed.

*S. H. West* and *Gaughan & Sifford,* for appellant.

1.  The law of this case is settled in 85 Ark. 12. There was no *public necessity* for a station at Ogamaw, and the Legislature cannot arbitrarily and unreasonably require one constructed. 172 U. S. 269.

2.  No notice was given of the special act as required by law. General laws of the State cannot be suspended by special

acts. Const. art. 5, § 24; 36 Ark. 166; 84 N. E. 3; 4 Am. Rep. 576; 18 L. R. A. 95; 86 Miss. 72; 38 So. 732.

3. The act is in violation of the Fourteenth Amendment to the Constitution of the United States.

*Hal L. Norwood,* Attorney General, and *Wm. H. Rector,* Assistant, for appellee.

1. The State has, in the exercise of its police power, the right to make regulations which, although indirectly affecting interstate commerce, do not constitute a regulation thereof, or a burden thereon. 124 U. S. 465; 128 *Id.* 96; 93 *Id.* 99; 166 *Id.* 427; 133 *Id.* 286; 163 *Id.* 299; 187 *Id.* 137; 169 *Id.* 613; 216 *Id.* 27; 207 *Id.* 328; 216 *Id.* 262.

2. The act does not deprive appellant of its property without due process of law, nor without compensation, and is not violative of the Fourteenth Amendment to the Constitution of the United States. 85 Ark. 12, 181; 91 Ark. 362; 54 Ark. 112; 156 U. S. 649; 142 *Id.* 449; 109 La. Ann. 263. An act is not unreasonable because a station is unremunerative. 13 Cyc. 140-144-5; 3 Wood on Railroads, § § 287c, 495; 179 U. S. 287; 166 U. S. 427; 206 U. S. 1; 48 So. 236; 85 Ark. 23.

3. The giving of notice is a matter which is addressed to the Legislature and not to the courts. 48 Ark. 370.

4. The act does not suspend the operation of any general law. 59 Ark. 513; 61 *Id.* 21; 35 *Id.* 69; 49 *Id.* 291; 49 *Id.* 325.

FRAUENTHAL, J. This is an appeal by the St. Louis Southwestern Railway Company, the defendant below, from a conviction upon an indictment charging it with unlawfully and wilfully failing and refusing to establish and keep open a depot at Ogamaw, in Ouachita County. The Legislature enacted a law, which was approved May 31, 1909, by which it was provided that the defendant should within 60 days after the passage of the act establish and keep open a depot at said Ogamaw, and that upon a refusal, failure or neglect so to do it should be guilty of a misdemeanor. (Acts 1909, p. 986.) The defendant having failed to establish and keep open a depot as required by the provisions of said act, the grand jury of said county returned an indictment against it charging it with a violation of the provisions thereof. To this indictment the defendant interposed the following pleas: First, It alleged that it was a common

carrier engaged in interstate commerce, and that the act of the Legislature in question was a regulation of and burden on interstate commerce, contrary to section 8 of article 1 of the Constitution of the United States, and therefore void. Second. That the said act was violative of the Fourteenth Amendment ot the Constitution of the United States because it in effect amounted to depriving the defendant of its property without due process of law. Third. That the said act is violative of section 24 of article 5 of the Constitution of the State, providing, in effect, that in all cases where a general law can be made applicable no special law shall be enacted. Fourth. That said act was void because in violation of section 25 of article 5 of the Constitution of the State, in that the act in question is a special act, and notice that same would be introduced was not given prior to its introduction in the Legislature. Fifth. It was also alleged that at the time of the passage of said act and continuously since there was no public necessity for said depot, and that, if defendant was required to comply with the provisions of the act, it would amount to a confiscation of its property.

The State interposed a demurrer to the first, third and fourth pleas above made by defendant, which was by the court sustained. The court thereupon heard testimony relative to the other pleas made by defendant, and, finding that they were not sustained by the evidence, overruled same. The court then proceeded by consent of the parties to try the case upon the testimony introduced upon the hearing of the above pleas, and made a finding against defendant, and rendered judgment accordingly, from which the defendant has appealed.

The questions involving the validity of the above act of the Legislature requiring the defendant to establish a depot at Ogamaw have been either expressly or in effect settled by the case of *Louisiana & Ark. Ry. Co.* v. *State,* 85 Ark. 12. In that case it was held that the Legislature in the exercise of its constitutional powers had the right to supervise railroads within the State and to require them to establish and maintain depots at given points upon their lines. It was also held that such legislative power must not be exercised arbitrarily or unreasonably, and that it became a judicial question for the courts to determine under the facts of each case whether or not by such

requirement the Legislature had exceeded its constitutional power. In the exercise of its power to require a railroad company to establish and maintain a depot at a given point upon its line the Legislature must act reasonably and not arbitrarily; in other words, there must be a real necessity for such depot in order to serve the public needs and convenience. The Legislature has primarily the right to determine whether the public necessity and convenience require the establishment of the depot at the given point, and the courts will not disturb that determination unless it is clearly shown that such requirement is unreasonable and arbitrary. In that case *(Louisiana & A. Ry. Co.* v. *State, supra)* it was said: "The legislative determination should be and is conclusive unless it is arbitrary and without any foundation in reason and justice. * * * The utmost force must be given to the legislative determination of the necessity for a station and the reasonableness of requiring the company to erect and maintain one." In determining from the testimony adduced in any given case whether or not the requirement is reasonable the primary question to be considered is whether or not such depot is needed in order to serve the public convenience and wants. The mere fact that the establishment and maintenance of such depot would greatly exceed the revenues that might be derived from the business at such place should be considered, but this would not be controlling. Viewing the testimony that was adduced upon the trial of this case in the light of these principles, we cannot say that there was no public necessity for this depot or that the requirement that it be established was unreasonable and arbitrary. We do not think that it would serve any useful purpose to set this testimony out in detail. It is sufficient to say that the testimony tends to prove that there are three store houses at Ogamaw, and that there are about 20 families living within its immediate vicinity. Fully 100 families live within six or seven miles of the place, all of whom would be served by the erection and maintenance of a depot at this place. There is a postoffice there, and a flag station, and freight and passengers have for some time past been received and delivered at the place. The average monthly receipts at this point for freight for 14 months next prior to the finding of the indictment was $70.72, and the average monthly

income from passengers for the same period was $77. The only expense to the defendant in erecting such depot would be the actual cost thereof. The evidence tends to prove that the cost of such a depot would be about $900, and the monthly expenses in maintaining same would be about $75. Under this proof we cannot say that the Legislature acted without reason and arbitrarily in determining that there was a public necessity for the establishment and maintenance of a depot at this place.

It is claimed by defendant in one of said pleas, and it is now urged, that said act of the Legislature is invalid because it is violative of section 24 of article 5 of the Constitution of the State, which provides: "In all cases where a general law can be made applicable, no special law can be enacted; nor shall the operation of any general law be suspended by the Legislature for the benefit of any particular individual, corporation or association; nor where the courts have jurisdiction to grant the powers or the privileges or the relief asked for."

It is contended that the Legislature of the State passed an act which was approved May 17, 1907, which was amendatory of an act approved April 5, 1907 (Acts 1907, pp. 356, 832), by which the Railroad Commission of Arkansas was given the power upon proper conditions to require the establishment and maintenance by railroad companies of depots at places designated by the commission upon their lines; that this was a general law applicable to the establishment of a depot at Ogamaw, and that the Legislature was on this account inhibited by said constitutional provision from passing this special act. This question, we think, was in effect decided by the case of *Louisiana & A. Ry. Co.* v. *State, supra.* While the prosecution in that case was under an act of the Legislature passed prior to said above act impowering the Railroad Commission of Arkansas to require the establishment by railroad companies of depots at designated places on their lines, nevertheless if a general law could be made applicable to the establishment of a depot required by the act under which this prosecution is had, a general law could also have been made applicable to the establishment of a depot required by the act under which the prosecution was made in the case of *Louisiana & A. Ry. Co.* v. *State, supra.* Under the above constitutional provision, the question is not

whether the special act was passed after or before the enactment of a general law that might be applicable to the case, but the question is solely whether or not a general law can be made applicable to such case. In that event no special law should be enacted, whether the general law has or has not been actually passed by the Legislature. But, in addition to this, the question is, who shall determine whether or not the general law will subserve the purpose as well as a special act? This court has held that the Legislature is the exclusive judge to determine this question. The Constitution has vested the Legislature with the power over the subject involved in this enactment, and in matters over which it has the power to act it becomes the duty, as well as the right, of the Legislature to determine whether or not a general law can be made applicable to accomplish the purpose and whether or not it is necessary to put in force a special law to secure the object desired. In the case of *Davis* v. *Gaines,* 48 Ark. 371, this court said: "According to the adjudged cases, the Legislature is the sole judge whether provision by a general law is possible, except in the enumerated cases of changing the venue in criminal cases, changing the names of persons, adopting and legitimating children, granting divorces and vacating roads, streets or alleys. The provisions are merely cautionary to the Legislature." *Carson* v. *St. Francis Levee Dist.,* 59 Ark. 513; *Boyd* v. *Bryant,* 35 Ark. 69; *Powell* v. *Durden,* 61 Ark. 21; Cooley on Const. Lim. (7 ed.) 184; 8 Cyc. 851; *State* v. *Hitchcock,* 1 Kan. 178; *Richman* v. *Supervisors,* 77 Iowa, 513.

And the Legislature is likewise the sole judge of whether or not the requirement of the Constitution (art. 5, § 26) that notice of the introduction of a proposed bill be given has been complied with. *Davis* v. *Gaines, supra.*

It is claimed by defendant in its first plea that the act in question in its practical effect tends to regulate and burden interstate commerce, in which defendant is engaged as a common carrier, and that on this account the act is violative of section 8 of art. 1 of the Constitution of the United States and therefore invalid. But we think that the requirement of the establishment of a station at a given point upon the line of a railroad company, which is determined to be a public necessity, is but the exercise of the police power of the State by the Legislature for

the safety, convenience and welfare of its citizens. The State has the right, in the exercise of its police power, to make all those regulations which have for their object the protection of the health, safety, and welfare of its citizens; and although such regulations may incidentally affect interstate commerce, they do not constitute a regulation or burden thereof, within the inhibition of the above constitutional provision of the general government.

In the case of *Sherlock* v. *Alling*, 93 U. S. 99, the Supreme Court of the United States said: "In conferring upon Congress the regulation of commerce, it was never intended to cut the States off from legislating on all subjects relating to the health, life and safety of their citizens, though the legislation might indirectly affect the commerce of the country. Legislation, in a great variety of ways, may affect commerce and persons engaged in it without constituting a regulation of it, within the meaning of the Constitution." And in the case of *Gladson* v. *Minnesota*, 166 U. S. 427, the same court said: "Even when its road connects, as most railroads do, with railroads in other States, the State which created the corporation may make all needful regulations of a police character for the government of the company, while operating its road in that jurisdiction. It may prescribe the location and plan of construction of the road, the rate of speed at which the trains shall run, and the places at which they shall stop, and may make any other reasonable regulations for their management, in order to secure the objects of the incorporation, and the safety, good order, convenience and comfort of all the passengers and of the public. All such regulations are strictly within the police power of the State."

In the exercise of the State's police power it has been held that the States may pass laws requiring railroad companies to fence their right-of-way, providing for the quarantine of cattle carried in interstate commerce, requiring certain conveniences and facilities at its stations, requiring guards and guard posts on bridges and trestles and their approaches; and in requiring many other observances which will subserve the safety, life, health and convenience of the citizens of the States. 2 Hutchinson on Carriers (3 ed.), § 955; *Reid* v. *Colorado*, 187

U. S. 137; *New York, etc., Ry Co.* v. *New York,* 165 U. S. 628; *Missouri Pac. Ry. Co.* v. *Kansas,* 216 U. S. 262; *Smith* v. *Alabama,* 124 U. S. 465; *Kansas City So. Ry. Co.* v. *State,* 90 Ark. 343.

Upon a consideration of the whole case we find no error in the trial thereof or in the judgment that was rendered; and the judgment is accordingly affirmed