## ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* BELLAMY.

Opinion delivered June 15, 1914.

1. RAILROAD COMMISSION—POWERS—RELOCATION OF RAILWAY STATIONS.— Under the act of May 17, 1907, which confers upon the railroad commission power to hear and consider petitions for "depots, stations, spurs," etc., and "to determine the amount, degree and character of construction, equipment, changes, enlargement of stations

and depots," the railroad commission has power to establish a depot or station in the first place, and to change the location of depots that have been formerly established. (Page 393.)

2. RAILROAD COMMISSION—RELOCATION OF STATION—PETITION.—Under the act of May 17, 1907, a petition for the establishment, discontinuance or relocation of a railway station, is necessary to give the commission jurisdiction of the matter. . (Page 394.)

3. RAILROAD COMMISSION—RELOCATION OF RAILWAY STATION—DISCRETION.—A petition emanating from at least fifteen *bona fide* citizens residing in the territory sought to be affected, setting forth that they desire the establishment of a depot or station, or a discontinuance thereof at one point and a relocation of the same upon the right-of-way of any railway, in this State, is sufficient to give the commission jurisdiction to act in the premises, whether the exact point for the location or establishment or relocation, of the depot or station is precisely designated and defined, or not, and the railroad commission may establish the new station at any point "within the territory to be affected," which is found to be most conducive to the public welfare, considering also the welfare of the railroad company and the convenience of the general public. (Page 395.)

4. RAILROAD COMMISSION—RELOCATION OF STATION—REASONABLENESS OF ORDER.—Where the railroad commission ordered a railroad company to change the location of its depot or station, *held*, under the facts, that the order was reasonable and did not amount to a taking of property without compensation. (Page 396.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

More than fifteen citizens of the town of Benton, Saline County, Arkansas, presented a petition to the Railroad Commission of Arkansas, in which they stated that they were shippers and patrons of the St. Louis, Iron Mountain & Southern Railway Company, and that the depot of said company at Benton had been recently destroyed by fire; that the company was preparing to build a new depot on the old site, which was on the extreme edge of the city, and not accessible to travelers without passing a distance of 1,500 or 1,700 feet along the right-of-way of the company and between its tracks where travel was made extremely dangerous by the passage of trains on the main line and switches of the railway. They

urged the commission to require the railway company
to build its depot at a point immediately south of where
its line known as the Little Rock & Hot Springs Western
was intersected by East Street and Main Street.

The commission took the petition under considera-
tion, visited the town of Benton, examined the location
mentioned in the petition, heard many witnesses, and
concluded that it would be unwise to require the railway
company to build its new depot at the point named in the
petition.  But it issued an order requiring the railway
company to build its new depot building at a point be-
tween where its depot had been located and the location
asked by the petitioners, which it described in the order
as follows: "Commence on the east line of East Street
between tracks of the Iron Mountain main line, and tracks
of the Hot Springs Western branch of the Iron Mountain
railway, with the platform, run thence east with platform
340 feet and build passenger station according to plans,
which show length of new station to be 188 feet, then con-
tinue eastward with the platform 340 feet on the east or
north side of the depot."

The company was ordered to begin construction work
on its new depot building on or before July 15, 1913.

The appellant St. Louis, Iron Mountain & Southern
Railway Company (hereafter, for convenience, called
company), instituted this suit against the appellees to en-
join them from enforcing the above order, setting up that
the railroad commission (hereafter called commission),
did not have authority under the act of May 17, 1907 (un-
der which it claimed to be acting) to make the order; that
no petition asking that the passenger depot be located at
the point designated by the commission, was filed as the
statute requires; that the location designated in the peti-
tion that was filed was several hundred feet west of the
location selected by the commission; that the order was
void because it imposed an unnecessary and unreasonable
burden and expense upon the company in requiring it to
remove its station from a point where it had acquired
station grounds which were adequate for all purposes,
and which had been fully prepared for depot purposes

at great expense, and that to place the depot at the point designated by the commission would require the company to obtain and improve other lands, to readjust and change its numerous tracks, to cut down the grade of its line at various points at an enormous expense, and thereby deprive the company of its property without due process of law and in violation of the Fourteenth Amendment to the Constitution of the United States, which provides that no State shall deprive any person of life, liberty or property without due process of law, nor deny any person within its jurisdiction the equal protection of the law; that the order was unreasonable and void for the reason that it required the company to place its depot at a point where its lines passing same would be upon a curve and upon a grade, making it exceedingly dangerous to operate its trains at said station; that the order was in violation of section 22, of article 2, of the Constitution of Arkansas, which provides "that the right of property is above and higher than any constitutional sanction, and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor;" that the order was in violation of section 9, article 2, of the Constitution of Arkansas, which prohibits the imposition of cruel and unusual punishment and excessive fines.

The appellees answered, denying that the order was void, as set up in the allegations of the complaint, and that the order imposed any unreasonable burden upon the company, or that the company would be irreparably injured by the enforcement of the order. They further set up, as reasons why the company should be required to obey the order of the commission, the following: "That the site at which plaintiff desires to build its new depot is way off at one side of the city, has no streets leading to or from it; that it is located between the tracks of the defendant company, same being the main line of the St. Louis, Iron Mountain & Southern Railway Company on the south, and the Little Rock & Hot Springs Western Railway on the north; that said tracks are located about 100 feet apart, where plaintiff has maintained its depot, and about 200 feet apart at the point where said tracks

are crossed by Main Street; that from Main Street to the site where plaintiff maintains its depot is a distance of more than one-fourth of a mile; that practically all of the travel from the city to said station is by way of Main and East Streets, until the line of the Little Rock & Hot Springs Western Railway is crossed, and then between the tracks to said station; that in going from Main and East streets to said station, it is not only necessary to cross the railroad track of the Little Rock & Hot Springs Western Railway, but also to travel for a distance of 1,-500 feet from Main Street, and 1,200 feet from East Street between the said tracks of the plaintiff company, and also to cross a connecting track that connects the Little Rock & Hot Springs Western Railroad track to that of the main line of the St. Louis, Iron Mountain & Southern Railway Company; that the land lying between the tracks, and over which it is necessary for the public to travel, belongs to the plaintiff company; that the city owns no street which approaches said station nearer than approximately 1,200 feet; that because of the location of said station at the place where plaintiff now contends that same remain located, it is very dangerous and inconvenient for people of Benton and vicinity to go to and from said depot," etc.

The answer then proceeds to enumerate at length the causes and conditions existing at the place where the company proposes to build the new depot that would make the same dangerous and inconvenient for the people of Benton. Appellees averred that for twenty-six years and until about the year 1901, "the plaintiff company operated its depot at a point between Main and Market streets, on a curve much greater than that at the point designated by the commission; that it was only after the building of the Little Rock & Hot Springs Western Railway and the acquirement by gift from the people of Benton of the forty-acre tract of land which now lies immediately north of the site where said depot was burned that plaintiff moved its depot to the site where it now claims the same should be permanently located; that

neither the curve nor grade at the point designated by the commission for said depot is such as to make it more dangerous or hazardous for the plaintiff company to operate its trains than it would be with the station located at the point contended for by said company; that it is necessary for the convenience and safety of the public, who are patrons of the plaintiff, using its depot at Benton that said depot be moved to a point as far west as that designated by the commission.

An intervention was filed by various citizens, adopting the allegations of appellant's complaint, protesting against the removal of the depot to the place designated by the commission, and setting up that they were engaged in business near the location of the site selected by the railway company, and that the change in the location of the depot would render their property of little or no value; that their property was acquired with the understanding that the depot would remain where located, and that if they had not understood that the depot would remain there, they would not have invested their money in the property. They joined in the prayer for an injunction against the enforcement of the order of the commission.

The chancery court, after hearing the evidence, which was adduced *ore tenus* and taken down by a stenographer and afterward transcribed and made a part of the record of the chancery court, found that the commission had authority to make the order; that the petition presented by more than fifteen citizens was sufficient to authorize the commission to make the order of which appellant complains; "that the old location where the depot was burned is a better location for the depot building than the location mentioned in the order of the Railroad Commission;" but the court was of the opinion that it had no authority to set aside the order made by the commission unless there was no reason therefor, and the court was of the opinion that there was a reason for the commission to make the order, and therefore entered a decree dis-

missing appellant's complaint for want of equity.    Other facts stated in the opinion.

*E. B. Kinsworthy* and *T. D. Crawford,* for appellant.

1.    The statutes do not empower the Railroad Commission to relocate stations.    See Act May 17, 1907, section 1.    The question presented here is not the power of the railroad commission to establish a depot, but the power to require the railway company, at great expense, to abandon a depot already established, and to establish another depot at another location.    The commission is not empowered, either expressly or by implication, to alter or change the location of stations already established.    31 Fla. 482, 34 Am. St. 39; 2 L. R. A. 195; 2 Elliott on Railroads, 684, and note; *Id.* 66; 36 Ark. Law Rep. 156; 112 Pac. 120; 130 Ill. 175; 132 Ill. 471; 74 Neb. 77; 142 U. S. 492; 110 U. S. 667; 61 Miss. 725, 20 Am. & Eng. Railroad Cases, 303; 64 Ill. 414, 16 Am. Rep. 564; 132 Ill. 559, 22 Am. St. 556.

2.    There was no petition for the location of the depot where it was ordered to be located.

If it be conceded that "the territory sought to be affected" by the location of a depot includes the town most directly affected by the establishment of the station, still, a petition asking to have a station established at a particular point does not authorize the commission to locate a station at another and intermediate point.

3.    The order No. 825 of the commission required appellant to remove its station from the point where it has acquired and improved station grounds to a new point which would require appellant to procure and improve other grounds at great expense, destroying the value of property already improved and causing great and unnecessary expense in the acquirement and improvement of other property, without any proportionately compensating advantage to the public.

The order is unreasonable and invalid as a taking of appellant's property without due process.    217 U. S. 196.

4.    The order is unreasonable in requiring appellant to locate its depot at a place where its main line will be

upon a curve, and its branch line upon a grade. 67 Minn. 385; 87 Ia. 644; 74 Neb. 77; 87 Miss. 679; 31 Okla. 509.

Appellant's witnesses fully explained the difficulties incident to locating the station upon a curve, as follows: (1) The difficulty in starting a train on a curve; (2) the difficulty in coupling cars when on a curve, and (3); the difficulty trainmen experience in seeing signals when the train is on a curve. This testimony is entirely uncontradicted, and demonstrates the unreasonableness of the order.

The burden is on the appellees to show that appellant abused its discretion in locating the site of its station. 68 Miss. 653. The discretion of a railroad company in establishing and maintaining its stations should not be interfered with, except where public necessity requires it. 85 Neb. 818, 26 L. R. A. (N. S.) 444-450; 57 Ark. 359; 97 Ark. 89.

Where a railroad commission is given statutory authority to require a railroad company to erect and maintain depots at places selected by the commission, it can not exercise such power arbitrarily and in disregard of public need or necessity. 114 S. W. (Tex.) 192.

*W. R. Donham,* for appellee.

1. The statute intended to give to the railroad commission as much authority over the matter of establishment, enlargement, equipment and changes in depots as was vested in the State prior to the passage of the act. See sections 1 and 2 of the act of May 17, 1907.

It is not the duty of the courts to defeat the will of the people expressed through their representatives, but rather to enforce it unless some vested right or provision of the Constitution has clearly been invaded. Moreover, the necessity for such legislation being primarily a question for legislative determination, the courts will not interfere unless that power of determination has been exercised arbitrarily and without reason. 25 Ark. 298; 85 Ark. 12; 97 Ark. 473; 206 U. S. 7; 99 Ark. 1.

2. Appellant's contention that there was no petition for the location of the depot at the place where it was

ordered to be located, is a mere quibble. To say that the railroad commission must locate a depot upon the exact spot designated in the petition, is unreasonable.

3. There is no merit in the contention that the commission's order No. 825 is unreasonable and invalid as taking appellant's property, without due process.

The record does not bear out appellant's statement in support of this contention. There is nothing in the record to show that appellant would have to acquire any additional ground, or that the value of its present improved premises would be decreased. The order does not deprive appellant of its property without due process, neither is it unreasonable. 85 Ark. 112; 99 Ark. 18; 91 Ark. 358; 85 Ark. 181; 54 Ark. 112; 156 U. S. 649; 142 U. S. 449; 109 La. Ann. 263; 13 Cyc. 140-144, 145; 3 Wood on Railroads, § 287; *Id.* 495; 179 U. S. 428; 206 U. S. 1; 22 Wall. 136; 176 Ill. 512; 48 So. 236; 207 U. S. 88; 32 L. R. A. 857; 52 N. E. 292; 103 Mass. 254; 115 N. W. 757; 107 U. S. 285.

4. The location of the depot in this case is not open to the objection that it is unreasonable because it is upon a curve. The evidence is positive that unless the curve is sharp, as much as four degrees, it is not objectionable; and that the curve at this point is only one and one-half degrees. Appellant's engineer testified that appellant has many stations located on one and one-half degree curves.

Wood, J., (after stating the facts). Appellant contends:

*First.* That the statutes did not empower the railroad commission to relocate stations.

The statute provides: "Section 1. That the Railroad Commission of Arkansas be and the same is hereby authorized, empowered and required to hear and consider all petitions for train service, depots, stations, spurs, sidetracks, platforms and the establishment, enlargement, equipment and discontinuance of the same along and upon the right-of-way of any railroad in this State; *provided,* said petition shall be signed by at least fifteen *bona fide*

citizens residing in the territory sought to be affected by said petitioners.

"Sec. 2.  The said Board of Railroad Commissioners shall, within thirty days after the filing of said petition, proceed to make a personal inspection of the conditions complained of and investigate the object sought to be accomplished by said petitioners, and shall have the right to summon and swear witnesses, which summons shall be served by any sheriff, constable or deputy having legal jurisdiction; whereupon, the said Board of Railroad Commissioners shall determine the amount, degree and character of construction, equipment, changes, enlargements of stations and depots which should be supplied by such railroad company, its lessee, or operator, and shall have the power and authority to require a reasonable train service for each and every such railroad station and depot within the State of Arkansas, and their finding shall be binding upon all such railroads within the State of Arkansas."    Act 149, p. 356, Acts 1907.

The power conferred upon the commission by the above statute to hear and consider petitions for "depots, stations, spurs, sidetracks," etc., and "to determine the amount, degree and character of construction, equipment, changes, enlargement of stations and depots," is sufficiently comprehensive to enable the commission to establish a depot or station in the first place, or to change the location of depots that have been formerly established. The act, in express terms, gives the commission power to hear and consider petitions for the "discontinuance" of depots, stations, spurs, etc., "as well as for their establishment."

While the word "relocate" is not used, yet the terms employed in the act are broad enough to include the relocation of a depot or station.  A discontinuance of a depot or station at one location and the establishment of it at another is but a relocation.  Therefore, the power to "discontinue" and to make "changes" of stations and depots necessarily includes the power to relocate.

*Second.* Under the statute, a petition for the establishment of depots, stations, etc., or the discontinuance of the same at one point and a relocation and establishment thereof at another, is necessary to give the commission jurisdiction of the subject-matter. But, while a petition "signed by at least fifteen *bona fide* citizens residing in the territory sought to be affected by said petition" is essential to give the commission jurisdiction, the commission, in the matter of locating or establishing a depot or station, is not required to order the same built or established upon the exact spot designated in the petition. The statute does not require that the petition shall designate the precise point where the depot shall be established, and if the petitioners do define the place for the location of the depot, the commission is not bound to establish the same upon the exact spot and according to the limits set forth in the petition. The commission is only required to consider "the territory sought to be affected," and, of course, would be precluded from establishing a depot beyond the territory sought to be affected. But, as we have stated, there is nothing in the act requiring the exact location to be defined, nor circumscribing the authority of the commission to those precise limits where they have been set forth in the petition. A petition emanating from at least fifteen *bona fide* citizens residing in the territory sought to be affected, setting forth that they desire the establishment of a depot or station, or a discontinuance thereof at one point and a relocation of same along and upon the right-of-way of any railway in this State is sufficient to give the commission jurisdiction to act in the premises, whether the exact point for the location or establishment, or relocation, of the depot or station is precisely designated and defined or not. Here "the territory sought to be affected" was the city of Benton, and the petition was signed by more than the requisite number of *bona fide* citizens of that territory. This was such a petition as the statute contemplates, and it gives the commission jurisdiction of the subject-matter, and it was then within the power of the commission to discontinue

the old station and establish the new depot along the line of appellant's railroad at any point "within the territory to be affected," which was found to be most conducive to the public welfare, taking into consideration, of course, the interests of the railway company, and also the convenience of the general public that was to be subserved by the granting of the petition.

It can not be said that because the commission did not direct the establishment of the new depot at the exact point described in the petition, that it acted without a petition, and therefore had no authority to make the order. There was a petition signed by more than the prescribed number of *bona fide* citizens, and it was requested at the hearing that if the commission did not see fit to locate the new depot at the site designated in the petition, that it be placed as near that site as practical.

Every requirement of the law was met in the matter of the petition.

*Third.* Appellant contends that the order under review is unreasonable and invalid because taking its property without due process of law. Appellant, in this connection, says: "The effect of the order is to destroy the value of the property owned by it and to compel it to acquire and improve other property at great and unnecessary expense without any proportionately compensative advantage to the public."

Appellant was given an opportunity to be heard before the commission, and was heard. The commission had before it the testimony adduced by the appellant showing the difference between the cost of rebuilding the new depot and the necessary houses and the arrangement of the tracks at the place designated by the commission, and the cost of rebuilding and rearranging the tracks, freight houses, etc, at the place of the old station. These were questions of fact addressed to the commission, and it could serve no useful purpose to set out in detail and discuss the evidence bearing upon these issues. The difference in the expense of establishing and maintaining a station at the point designated by the commission is

greater, as shown by the testimony of witnesses for appellant, than the expense of building a new depot and maintaining the station at its present location, but it can not be said that this difference is so great as to amount to a confiscation of appellant's property. The difference in the cost of the establishment and maintenance between the two locations is not so great as to make the order of the commission unreasonable and arbitrary. This was a matter addressed primarily to the commission; and after a careful consideration of the evidence bearing upon this issue, we are of the opinion that the order of the commission was not arbitrary and unreasonable.

However much we may differ from the finding of the commission, upon the evidence in this record, as to the wisdom and expediency of its order, on acconut of the increased cost to the appellant in making the necessary expenditures to comply with its order, nevertheless a fair consideration of all the testimony adduced on this issue does not convince us that the order was arbitrary and unreasonable. The order of the commission, under the act, and the facts adduced by this record, was not a taking of property without due process of law. *St. Louis, I. M. & S. Ry. Co.* v. *State,* 99 Ark. 1.

*Fourth.* It is next contended that the order was unreasonable in requiring the appellant to locate its depot at a place where its main line will be upon a curve and its branch line upon a grade.

In *Louisiana & Ark. Ry. Co.* v. *State,* 85 Ark. 12, we said: "When the Legislature passes a special act requiring the doing of a certain thing, such as the establishment and maintenance of a station at a given place by a railroad corporation, there may be a judicial question presented whether or not a real necessity exists for the doing of the thing in order to reasonably serve the public convenience. It is a question primarily for legislative determination, and that determination should not be disturbed by the court unless the power has been exercised arbitrarily and without reason. In other words, the legislative determination should be, and is conclusive, unless

it is arbitrary and without any foundation in reason or justice. There may be cases where the power is exercised so arbitrarily and unreasonably that the court should declare, as a matter of law, that the Legislature exceeded its power, and that the legislative determination should be disregarded.''

We further said: ''The utmost force must be given to the legislative determination of the necessity for a station and the reasonableness of requiring the company to erect and maintain one.''

And, in *St. Louis S. W. Ry. Co.* v. *State*, 97 Ark. 473, we held (quoting syllabus): ''The Legislature has primarily the right to determine whether the public necessity and convenience require the establishment of a railway depot at a given point, and the courts will not disturb their determination unless it is clearly shown that such requirement is unreasonable and arbitrary.''

In *St. Louis, I. M. & S. Ry. Co.* v. *State, supra,* the court had under consideration the power of the railroad commission, under this statute, to order the construction of a spur track, and we said: ''The Legislature had the right to require the construction of this spur track, and, having it, could delegate the power to the railroad commission, as it has done by said act of 1907. If it had made the requirement directly by statute instead of conferring the power upon the railroad commission to make it, its action would have been subject to judicial review only as being so arbitrary and unreasonable as to cause it to be void for want of power. The order of the railroad commission, made under the authority delegated to it, is subject to legal review for the same cause.''

These principles doubtless were in the mind of the chancery court when passing upon the facts on the issue as to whether or not the order of the commission was so arbitrary and unreasonable as to render the same void. The court was correct in its conclusion. It can not be said that the order of the commission was ''arbitrary and without any foundation in reason and justice.''

Appellant contends that the order was unreasonable because the testimony adduced by it showed that the location of the station under the order of the commission was on a curve on the main line; that being on a curve there was difficulty in starting trains, in coupling the cars and in seeing signals, all of which rendered the operation of trains far more difficult and dangerous than it would be on a straight track, like the one at the old station or place at which the appellant proposed to erect its new depot building.

The undisputed testimony showed that the station under the order of the commission would be located on a curve on the track of appellant's main line that was one and one-half degrees. There was much testimony on behalf of appellant tending to show that the difficulty, as well as the hazards, of operating the trains on this curve would be greatly increased; that if the station was located according to the order of the commission, on the branch line the engine would stand upon a one per cent grade, which would make it very difficult to handle long, heavy trains, whereas, at the old station there was a straight track on the main line and the grade of the branch line was of sufficient distance to permit the proper handling of trains. The testimony also tended to show that if the appellant undertook to straighten the curvature at the station under the order of the commission, and to reduce the grade on the branch line so as to enable it to properly handle the trains it would cost about $55,000. It was shown that a larger number of passenger trains passed through Benton than any other town in the State except Little Rock. This fact was because of the numerous passengers to Hot Springs.

It was shown that an effort was once before made before the railroad commission for the removal of the depot from its present location, which was unsuccessful, and likewise an unsuccessful effort was made to have the Legislature pass a special act requiring the removal of the depot from its present location. On the other hand, there was testimony tending to show that the site where

the station is now located, and the site where it would be located under the order of the commission were so nearly identical that either would make a good location; that the curve at the station of the Rock Island railroad at Benton was greater than would be the curve at the station under the commission's order; that a curve is objectionable if sharp, that is, if over four degrees; that while it is preferable always to have the stations located on a straight track, nevertheless appellant had quite a number of stations located on curves of one and one-half degrees.

It was shown that the appellant owned sufficient land between the two tracks to make a straight track south for five or six hundred feet; that it had room to straighten its tracks without getting off its right-of-way; that from the old station it had 522 feet of straight track; that it had plenty of room to carry the straight track 522 feet south of the new location.

It was shown that the cost of erecting the depot building at the station ordered by the commission and at the old station where the depot building had been burned would be approximately the same; and there was evidence tending to show that the convenience to the people of Benton as a whole would be far greater at the station ordered by the commission than at the old station, and that the danger and difficulty in operating trains at the station as ordered by the commission would be no greater than at the old location.

Without going into further detail concerning the facts, it suffices to say that it was shown that a majority of the commission visited the location, heard the testimony *pro* and *con,* and, after making a thorough investigation and giving the parties full opportunity to be heard, made the order now challenged by the appellant.

Under the principles already announced by this court as to the power delegated by the Legislature to the commission, we are of the opinion that the court was correct in holding that the order of the commission, under the facts adduced, was not arbitrary and unreasonable.

The decree, therefore, dismissing the appellant's complaint for want of equity, is in all things affirmed.