Kansas City Southern Railway Co. *v.* Arkansas Rail-road Commission.

Opinion delivered November 21, 1927.

1. Railroads—power over train service and stations.—In the absence of a statute, railroad corporations authorized to do business in the State would have plenary power over such matters as train service and stations.

2. Railroads—petition as to train service, depots and stations.—Under Acts 1907, p. 356, as amended by Acts 1907, p. 821, a petition signed by at least 15 *bona fide* citizens is essential to the jurisdiction of the Railroad Commission to consider and adjudge questions of train service, and stations, and their establishment, enlargement, etc.

3. Railroads—discontinuance of station.—Where a railroad is seeking to have a station agent discontinued, the statutory requirement of a petition of 15 *bona fide* citizens is inapplicable.

4. Railroads—jurisdiction of railroad commission.—The Railroad Commission has jurisdiction under the statutes over the subject-matter of abolishing station agencies as well as creating them, though the agencies were created by special acts of the Legislature, and the Commission has the implied power, in the absence of statutory regulation, to formulate rules of procedure for hearing of applications by the railroad for permission to abandon an agency.

Appeal from Pulaski Circuit Court, Third Division; *Marvin Harris,* Judge; reversed.

*James B. McDonough,* for appellant.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for appellee.

Wood, J.   On the 7th of October, 1926, the Railroad Commission of Arkansas issued the following order:

"There came on for hearing before the Commission the application and amended application of the Kansas City Southern Railway Company, asking that the Commission issue an order to permit the Kansas City Southern Railway Company to discontinue its agent at Ravanna, Arkansas, and, after due consideration of said application and all facts in the premises, doth find: That, by a special act of the General Assembly of the State of Arkansas, approved February 23, 1905, the Kansas City Southern Railway Company, under the provisions of said act, was required to erect a depot at Ravanna and keep an agent therein, to supply tickets, to receive freight for shipment, issue bills of lading, and to attend to all other services required of a station agent. The Commission holds that it does not possess the power to authorize the Kansas City Southern Railway Company to discontinue its agent at Ravanna, Arkansas, so long as the special act of the Legislature establishing the agent at Ravanna is in force. It is therefore by the Commission on this day ordered that the original and the amended application of the Kansas City Southern Railway Company, for authority to discontinue its agent at Ravanna, Arkansas, be and it is hereby dismissed from the docket of the Commission for the want of jurisdiction."

The railroad company appealed to the circuit court, and, on the 27th of January, 1927, the circuit court entered a judgment which recites, in part, as follows:

"This cause was submitted to this court upon the record duly certified to by the Railroad Commission of Arkansas, as required by law, and upon briefs of counsel. The court, being well and sufficiently advised in the

premises, finds that this cause must be affirmed, for the reason that the Arkansas Railroad Commission did not have jurisdiction, because no petition signed by fifteen *bona fide* citizens residing in the territory at the station of Ravanna, Miller County, Arkansas, was filed for the discontinuance of the agency at that place. This court holds that, under § 1638 of Crawford & Moses' Digest, the Arkansas Railroad Commission is without jurisdiction, unless a petition for the relief prayed for is signed by at least fifteen *bona fide* citizens residing in the territory sought to be affected by the petitioners. It is therefore by the court ordered, adjudged and considered that the decision of the Arkansas Railroad Commission be affirmed and the case herein dismissed.''

From the above judgment the railroad companies duly prosecute this appeal.

It will be observed that the only question for decision is whether or not the Railroad Commission has jurisdiction to entertain the petition of appellants to discontinue their station agent at the town of Ravanna, Arkansas. The Railroad Commission held that it had no power to discontinue, because of the special act of the Legislature of 1905 requiring the maintenance of an agency at Ravanna, while the circuit court held that the Railroad Commission had no jurisdiction because no petition was filed signed by fifteen *bona fide* citizens residing in the territory at the station of Ravanna for a discontinuance of the agency at that place. Both decisions are wrong.

1. Act 149 of the Acts of 1907, as amended by No. 338 of that session, provides, in part, as follows:

''Section 1. That the Railroad Commission of Arkansas be, and the same is, hereby authorized, empowered and required to hear and consider all petitions for train service, depots, stations, spurs, sidetracks, platforms, and the establishment, enlargement, equipment and discontinuance of the same along and upon the right-of-way of any railroad in this State; provided, said petition shall be signed by at least fifteen *bona fide* citizens residing in the territory sought to be affected.''

Section 2 requires the Railroad Commission, within thirty days after filing of the petition, to make a personal inspection of the conditions complained of and to investigate the objects sought to be accomplished by the petitioners, and gives the Commission power to hear testimony to determine the amount, degree and character of construction, equipment, changes, enlargements of stations and depots which should be supplied by said railroad, railroad company, its lessees or operator. Section 2 concludes as follows: "And shall have the power and authority to require a reasonable train service for each and every railroad station and depot within the State of Arkansas, and their finding shall be binding upon all such railroads within the State of Arkansas."

Section 3 provides for the filing of the findings and decrees of the Commission with the Secretary of State, Attorney General, and circuit clerk of the county where the decree is granted, and for notice upon the defendant railroad company of such decree by delivery of a copy of its findings and decrees to the nearest local station agent, and to the superintendent, general manager, or other operator of such railroad or railroad company.

The 4th section provides for the penalty wherein a railroad company shall refuse to comply with the findings and decrees and mandates of the Railroad Commission, and provides that no order for doing anything under the act shall be made by the Commission until all parties concerned shall have received ten days' notice of such proposed change.

The 5th section provides that the act shall not repeal any other act now in force or limit or curtail the powers and duties of the Railroad Commission of the State of Arkansas. See §§ 1638-1641, inclusive, C. & M. Digest.

In the absence of a statute, railroad corporations authorized to do business in this State would have plenary power over the matters set forth in the above statute. A consideration of all of its provisions convinces us that it was not the purpose of the Legislature to take away or to curtail these powers, except in so far as railroad

companies might attempt to exercise them in a manner detrimental to the public they serve. The only justification for the lawmaking body or the courts to place limitations or restraints upon the rights and powers of railroad companies under their charters is because such corporations may, in the absence of such limitations or restraints, in some manner seek to promote their own private and financial interests to the detriment of the public. The administrative functions of these corporations in the matters specified in the statute are peculiarly within the power and discretion of their managing boards, and it was not the purpose of the Legislature to interfere with their power and discretion to serve as best they may the financial interests of these corporations and their stockholders, so long as, by so doing, they do not conflict with the duty which they owe the public in such matters.

In *Northern Pacific Ry. Co.* v. *Washington Territory,* 142 U. S. 492, 12 S. Ct. 283, 35 L. ed. 1092, the Supreme Court of the United States, among other things, said:

"The location of stations and warehouses for receiving and delivering passengers and freight involves a comprehensive view of the interests of the public as well as of the corporation and its stockholders, and a consideration of many circumstances concerning the amount of population and business at, or near, or within convenient access to one point or another, which are more appropriate to be determined by the directors, or, in case of abuse of their discretion, by the Legislature, or by administrative boards intrusted by the Legislature with that duty, than by the ordinary judicial tribunals."

See also 2 Elliott on Railroads, § 739, and notes 73 and 74.

It was with a view of conserving the interests of the public that the Legislature provided, in the above statute, that at least fifteen *bona fide* citizens residing in the territory affected should petition for the matters therein specified when petitioners conceived that the public interest would be subserved by the granting of the prayer of their

petition. Such petitions are required and are essential to the jurisdiction of the Railroad Commission to consider and adjudge of any of the matters specified in the statute and set forth in the petition where the interest of the public is involved.

In *St. Louis I. M., etc., Ry. Co.* v. *Belamy,* 113 Ark. 384, at page 394, 169 S. W. 322, 324 (L. R. A. 1915D, 91), we said:

"A petition for the establishment of stations, depots, etc., or the discontinuance of the same, at one point and a relocation and establishment thereof at another, is necessary to give the Commission jurisdiction of the subject-matter." See also *St. Louis-S. F. Ry. Co.* v. *State,* 120 Ark. 182, 179 S. W. 342, Ann. Cas. 1917C, 873, where we again held that a petition, as required by the act, "is essential to give the Commission jurisdiction to act upon the matters mentioned in the act quoted from." We also said in that case, at page 187 (179 S. W. 343): "Evidently the Legislature did not intend to burden the Railroad Commission with the consideration of petitions for the things authorized to be petitioned for unless at least fifteen *bona fide* citizens residing in the locality to be affected were sufficiently interested to petition therefor." These were cases in which petitions were filed seeking relief for the public against the railroad companies under the statute, and they clearly hold that, where the interests of the public are affected in the matters set forth in the statute, a petition as therein specified is essential to give the Railroad Commission jurisdiction. But the statute does not require such a petition, and same is not essential, when the railroad itself is seeking relief through the Railroad Commission from a burden which involves, as it in substance alleges, great financial loss to it, while the removal of such burden would not in any manner injure the public it serves at its station at Ravanna. The petition specified and required by the statute, where the public is to be affected as against the railroad, is not essential to give the Railroad Commission jurisdiction to grant relief to the railroad itself,

which it asserts will not in any manner interfere with the service it renders the public at that station.

2.   This brings us to a consideration of the question as to whether or not the Railroad Commission had jurisdiction to discontinue the agency at Ravanna, notwithstanding the act of 1905 creating such agency. Act No. 50 of the Acts of 1905 requires the Kansas City Southern Railway Company to erect a depot at Ravanna of suitable convenience for the traveling public, and to provide a room at such station for the protection and storage of freight, and that this railroad company shall keep an agent at Ravanna to sell tickets, receive freight for shipment, issue bills of lading, and to attend to all services required of a station agent. Act No. 571 of the General Acts of 1919, page 411, created an Arkansas Corporation Commission, and gave it jurisdiction over common carriers, railroads, etc. That act abolished the Railroad Commission, and transferred all of its powers and duties to the Corporation Commission. Section 6 of that act, among other things, provides: ''Every person, firm or corporation engaged in a public service business in this State shall establish and maintain adequate and suitable facilities, etc., * * * and shall perform such services in respect thereto as shall be reasonably safe and sufficient for the security and convenience of the public,'' etc. Section 10 of that act gives the Corporation Commission power, among other things, ''to make any suitable order that the Commission may determine reasonably necessary to accommodate and transport the traffic, passenger or freight, transported or offered for transportation.'' Act No. 124 of the Acts of 1921, General Acts, page 177, abolished the Corporation Commission and transferred all of its proper functions to the Arkansas Railroad Commission. By act No. 124 of the Acts of 1921 it is provided that the jurisdiction of the Railroad Commission ''shall extend to and include all matters pertaining to the regulation and operation of all common carriers, railroads,'' etc., and '' (b) all other jurisdictions, if any, possessed by the Arkansas Railroad Commission under

the laws of Arkansas in force on March 31, 1919." On March 31, 1919, the Arkansas Corporation Commission possessed all the jurisdiction that had been before possessed by the Arkansas Railroad Commission. Amendment No. 2 to the Constitution was declared adopted January 13, 1899. That amendment, in substance, provides that the General Assembly "shall pass laws to correct abuses and prevent unjust discriminations and excessive charges by railroads for transporting passengers, freight," etc., and "shall provide for the creation of such offices and commissions and vest in them such authority as shall be necessary to carry into effect the powers hereby conferred." The General Assembly, on March 11, 1899, created a Railroad Commission. An examination of that act will discover that the powers conferred upon the Railroad Commission by the act creating it had reference to the regulation of railroad freight and passenger traffic in the State and the prevention of extortions and unjust discriminations therein.

The General Assemblies of 1901 and 1903 passed acts pertaining only to the powers of the Railroad Commission over tariff rates and the regulation thereof. Acts No. 149 and No. 338 of 1907, which are of the same purport, conferred upon the Railroad Commission additional powers to those of merely regulating tariff charges and discriminations therein, and provided as set forth in act 149 as amended by act 338 of the Acts of 1907 as set forth above. The next act affecting the jurisdiction and powers of the Railroad Commission was that of April 1, 1919 (act No. 571), abolishing the Railroad Commission and creating the Corporation Commission and conferring upon it all the powers and duties that were at that time exercised by the Railroad Commission. The next act was No. 124, approved February 15, 1921, *supra,* abolishing the Corporation Commission, creating, or re-creating, the Railroad Commission, and transferring all the proper functions of the Corporation Commission back to the Railroad Commission.

Now, before the passage of the General Acts of 1907, *supra,* conferring upon the Railroad Commission the

power, and requiring it to hear all petitions for train service, depots, stations, etc., there had been many special acts passed such as the act of 1905 under consideration, and kindred acts, such as those requiring railroads to open and maintain depots, stations, to stop trains at certain points and to keep and maintain agencies, etc. Many of the acts of this character were passed during the session of 1905, when the act under review was passed, and many such acts also were passed during the session of 1907, which conferred upon the Railroad Commission jurisdiction over such matters. The purpose of Amendment No. 2 to the Constitution was to confer upon the Legislature the power to create offices or commissions and to confer upon such offices or commissions the power to correct abuses and to prevent unjust discriminations, excessive charges in the matter of transporting freight and passengers, and to confer upon them such power as the Legislature itself had in the matters pertaining to trains, depots, stations, etc., as set forth in the act of 1907. It was doubtless conceived by the framers of the amendment and by the people in the adoption thereof, that such an administrative body as a Railroad Commission, composed of few members, constituted and given jurisdiction over such matters, could more efficiently serve the public as well as the common carriers than the General Assembly itself could serve them. Therefore the Legislature was given power to create such a commission and to delegate to it jurisdiction over the matters mentioned.

In *Helena Water Co.* v. *Helena,* 140 Ark. 597, at page 605, 216 S. W. 26, 28, speaking of Amendment No. 2 to the Constitution, we said: "The argument in this case is that the amendment to the Constitution restricts the powers of any office or commission created thereunder to those therein enumerated, viz., to the regulation of 'excessive charges by railroads, canals and turnpike companies,' and that it is beyond the authority of the Legislature to impose any further duties on any offices or commissions created for that purpose." In

answer to this argument we held, in effect, that it was within the power of the Legislature to create either a railroad commission or a corporation commission to carry out the powers enumerated in the amendment to the Constitution and other powers. We further said: "It is, in other words, the power to correct abuses by transportation corporations which is conferred by. the Constitution, and not the creation of any particular offices or commissions, and the Legislature could, in the first instance, have created the present commission, and conferred upon it the enumerated powers and others."

The act of 1907 is sufficiently comprehensive in its terms to give jurisdiction to the Railroad Commission to abolish agencies that have been created by special acts of the Legislature as well as to establish agencies where the Commission finds it necessary to do so. But, if we are mistaken in this conclusion, certainly the Legislature, in the subsequent acts of 1919 and 1921, *supra,* enlarged and extended the jurisdiction of the Corporation Commission, and the Railroad Commission to which the Corporation Commission's powers were transferred, so as to necessarily include, by implication at least, the power to abolish an agency as well as to establish one. This power is embraced in §§ 6 and 10 of act No. 571 of the Acts of 1919, creating the Corporation Commission and conferring upon it the power to establish and maintain adequate and suitable facilities, etc., and also, in § 10, "to make any suitable order that the Commission may determine reasonably necessary to accommodate and transport the traffic, passenger or freight," etc. It is also conferred upon the Railroad Commission by act No. 124, transferring to it all proper functions of the Corporation Commission and giving the Railroad Commission jurisdiction over all matters pertaining to the regulation and operation of all common carriers, railroads, etc. A consideration of Amendment No. 2 to our Constitution and of the various acts passed since its adoption creating the Railroad Commission and conferring upon it the broad general powers prescribed in

these several acts, convinces us that the Railroad Commission has jurisdiction over the subject-matter of abolishing railroad agencies as well as creating the same, and, by virtue of the powers expressly conferred upon it over the matters mentioned, it has the implied power, in the absence of a statutory regulation, to formulate rules of procedure for the hearing of applications on the part of the railroad company to be permitted to abandon an agency, or to correct any abuses to which the railroad companies themselves are subjected. These rules must provide for notice to be given the public and all parties interested in the subject-matter.

The Legislature, by vesting the Railroad Commission with these broad general powers over all matters pertaining to the regulation and operation of all common carriers, railroads, etc., and especially pertaining to the matters mentioned in Acts of 1907, relating to train service, depots, stations, etc., did not intend to repeal the special acts that had been passed, such as the act of 1905 under review, relating to the subject-matters specified in the Acts of 1907. But it was the purpose of the General Assembly, in enacting these statutes, notwithstanding these special acts, to confer upon the Railroad Commission the power, if the circumstances justified, to consider all matters over which the Railroad Commission is given jurisdiction under the general laws of Arkansas in force on March 31, 1919, which included the jurisdiction over the matters specifically mentioned in act No. 149 of the Acts of 1907, as amended by act No. 338 of that session and the enlarged jurisdiction conferred by the latter acts of 1919 and 1924, *supra.* The comprehensive jurisdiction vested in the Railroad Commission by act No. 124, *supra,* which, as above set forth, extends to and includes all matters pertaining to the regulation and operation of trains and all other jurisdictions possessed by the Arkansas Railroad Commission under the Constitution and laws of Arkansas in force on March 31, 1919, unquestionably confers jurisdiction on the Railroad Commission to correct all abuses

that then existed, or might in the future obtain, by virtue of any act of the Legislature covering the special matters designated by act No. 149, as amended by act 338 of the Acts of 1907, and all other matters pertaining to the regulation of all common carriers, railroads, etc., set forth in act 124 of the Acts of 1921. Such sweeping jurisdiction necessarily embraces the power, at the instance of a railway company, to discontinue an agency at a station where justified by the circumstances, although created by special act of the Legislature.

Our conclusion therefore is that the Railroad Commission had jurisdiction to entertain the petition of appellants for permission to abolish the agency at Ravanna, and that the Commission should provide for notice to be given of the pendency of the petition and an opportunity for all parties interested to appear and protest the application, and an opportunity for petitioner and protestants to take proof and to be heard on their respective contentions. From the final order entered by the Railroad Commission, after such hearing, the statute (act No. 124, § 20) makes provision for an appeal to the circuit court, and (§ 21 of act 124) makes provision for an appeal by any party aggrieved from the circuit court to the Supreme Court.

The circuit court therefore erred in affirming the decision of the Railroad Commission and in dismissing the application or petition of the appellants asking for authority to discontinue the agency at Ravanna. The judgment is reversed, and the cause is remanded with directions to the trial court to enter a judgment setting aside the order of the Railroad Commission denying the appellant's petition, and to certify its judgment to the Railroad Commission for further proceedings.