MISSOURI PACIFIC RAILROAD COMPANY *v.* WHELEN SPRINGS GRAVEL COMPANY.

Opinion delivered April 25, 1932.

670

R. E. Wiley, for appellant.

Rose, Hemingway, Cantrell & Loughborough, Coleman & Riddick, Gantt and J. S. McKnight, for appellees.

KIRBY, J. The appellees filed petitions with the Railroad Commission to require the Missouri Pacific to allow them $3 per car for switching cars by the gravel company's locomotives in and between the gravel plants and the carrier for the transportation.

The gravel plants are at various distances from, and are connected with, appellee's railroad, by private spur tracks. Each of the gravel companies owns switch tracks and locomotives which they use in their plant, and which are also used in switching cars onto the tracks of appellant.

The spur tracks were constructed by the gravel company, the rails being leased from the carrier.

The gravel companies alleged that in their switching they were doing part of the line haul, which the carrier was obligated to do, and claimed that they should

either have an allowance for that service performed for the carrier or that the carrier should be required to perform the switching.

The carrier contended that the service done by the gravel companies was a special service, and denied that the Railroad Commission had any jurisdiction to compel the service, or compensation in lieu of it. It claimed that it extended the service in so far as it participated at all under special contract for a private industry spur agreement, and that no part of the service was transportation service which it could be compelled to perform.

The Railroad Commission on its own motion instituted investigation into the question of reasonableness of requiring all carriers by rail either to perform the switching service, or to compensate the gravel companies for performing the switching service, and also to investigate questions of discrimination, and ordered other carriers to be made parties.

The carriers all filed responses, claiming that the Railroad Commission had no jurisdiction, and that, if the Commission had jurisdiction, the switching for which allowance is claimed was no part of the transportation service, but was interplant operation for which no allowance should be made. The carriers also alleged that the enforcement of the allowances would work an illegal discrimination, and they also contend that the Commission's order is void because its findings defeat instead of support the allowance.

Evidence was introduced, both by the appellees and appellant, and the Commission, after hearing the evidence, ordered that appellant either perform the service of delivering empty cars to the gravel pits of petitioners, and haul the loaded cars from the pits, or pay to the petitioners $2.50 per car for each loaded car handled, the order to become effective February 10, 1931.

The Missouri Pacific Railroad Company appealed to the Pulaski Circuit Court, where the case was heard, and the circuit court entered the following order:

672

"The court, being well and sufficiently advised as to all matters of law and fact arising herein, is of the opinion that the order of the Arkansas Railroad Commission should be in all things approved and affirmed.

"It is therefore considered, ordered and adjudged by the court that the order of the Arkansas Railroad Commission in this cause be, and the same is, hereby in all things approved and affirmed, and the defendant, Missouri Pacific Railroad Company, be, and it is hereby directed and ordered by the court to comply with the same."

From this judgment of the circuit court the railroad company has appealed to this court.

It is contended by the appellant that the Railroad Commission was without jurisdiction to order the allowances for two reasons: first, because such allowances are not within any subject-matter over which the statute gives the Commission jurisdiction; second, the service is a special one, pursuant to contract, which contract the Commission has no jurisdiction to compel.

The first question for our determination is whether, under the evidence in this case, the Railroad Commission had jurisdiction to try the case and make the order.

· Counsel on both sides have filed exhaustive briefs, and cited numerous authorities, which we have carefully considered, but which we do not deem it necessary to review here.

Our statute provides that the Commission shall make rules and regulations in respect to receiving, hauling, transporting and delivering of freight and express. Section 1649 of Crawford & Moses' Digest.

Section 1650 of Crawford & Moses' Digest authorizes the Commission to make and establish all needful rules and regulations, general and special, and for furnishing cars.

Act No. 124 of the Acts of 1921 also gives the Railroad Commission authority to regulate carriers.

These statutes were construed and the authorities reviewed in the case of *Kansas City Southern Ry. Co.* v.

*Ark. Railroad Commission,* 175 Ark. 425, 299 S. W. 761. In that case the court, among other things, said:

"The comprehensive jurisdiction vested in the Railroad Commission by act No. 124, *supra,* which, as above set forth, extends to and includes all matters pertaining to the regulation and operation of trains and all other jurisdictions possessed by the Arkansas Railroad Commission under the Constitution and the laws of Arkansas in force on March 31, 1919, unquestionably confers jurisdiction on the Railroad Commission to correct all abuses that then existed, or might in the future obtain, by virtue of any act of the Legislature covering the special matters designated by act No. 149, as amended by act 338 of the Acts of 1907, and all other matters pertaining to the regulation of all common carriers, railroads, etc., set forth in act 124 of the Acts of 1921."

The Railroad Commission would have the power to require the carrier to construct and maintain such switches and spur tracks as are reasonably necessary to properly serve the public, and if a carrier uses the private tracks of shippers for its purpose, the Railroad Commission would have the same right to regulate the switching on these tracks that it would on tracks which belonged to the carrier. The carrier, of course, could not be required to use the tracks of the shipper, nor could the shipper be required to permit the use of its tracks. That, as stated by the appellant, is a matter of contract between the parties. They, however, could not lawfully contract in such a manner as to discriminate against others. They could not so contract as to make the freight rates of the shipper either greater or less than the regular rates.

"The Commerce Act prohibits the payment of rebates, and its command cannot be evaded by calling them differentials or concessions, nor by taking the money from the railroad itself or from a company that is proved to be the same as the railroad. Otherwise nothing would be easier than for lumber companies to charter a railroad, collect freight as a railroad, but pay it out as a

lumber company to shippers." *Fourche River Rd. Company* v. *Bryant Lumber Co.*, 230 U. S. 316, 33 S. Ct. 887.

It is to prevent rebates, abuses and unjust discriminations that the Railroad Commission was created, and the laws creating the Commission and prescribing its powers and jurisdiction are to be liberally construed to effect the purposes for which they were created.

It is true that a common carrier cannot be required to receive freight on or along a private switch. The order of the Railroad Commission which was affirmed by the circuit court does not order the carrier to receive freight on a private switch. What the order does is to require the railroad company to do the switching, which is a necessary part of the transportation, or to pay the shipper for such service.

Appellant cites and quotes from *Fairview Coal Co.* v. *Ark. Central Ry. Co.*, 159 Ark. 649, 252 S. W. 920, 32 A. L. R. 191, to sustain its contention that it cannot be required to receive freight on a private switch. The court in that case, however, said: "Where a railroad company furnishes sufficient facilities of its own for the receipt and delivery of freight, there is at common law no duty resting upon it to receive or deliver freight upon a private siding or spur track."

The carrier, however, must furnish sufficient facilities of its own, or it may use the facilities furnished by the shippers, but in either event it must either do that part of the switching which is a necessary part of the transportation, or pay the shipper a reasonable compensation for the switching.

In speaking of the power of the Commission, it has been said: "And in dealing with the interest of the wider public we do not feel that the action of the Commission should be hampered or influenced by the necessity of considering the effect of the improvement on the local public, when its effect on the wider public of which the local public is a part will be beneficial." *West* v. *Philadelphia-B. & W. Rd. Co.*, 155 Md. 104, 141 Atl. 509.

The Commission, before making the order in this case, on its own motion brought in the other railroads of the State so as to consider the entire question.

"The railway company owes a duty to the shipper, to the public, and to itself. The Commission is authorized by statute to supervise the practice and regulations of railroad companies, and make such orders in connection therewith as it determines to be reasonable." *Halliday* v. *Public Utilities Commission,* 118 Ohio St. 269, 160 N. E. 713.

While there is some conflict in the evidence in this case, there is substantial evidence to show that the switching mentioned in the Commission's order is a part of the line haul, and a service to be performed by the carrier, and while, as contended by appellant, the Railroad Commission would have no authority to compel it to use the private tracks of the shipper, the Commission does have authority to determine whether the public necessity and convenience requires the establishment of spurs and switches, and there is nothing in the law to prevent it from using the switches and spurs of others. It may either do this or provide facilities of its own.

It is next contended by the appellant that, if the Commission had jurisdiction, the switching for which allowance was made is no part of the transportation service. As we have already said, while there is some conflict in the evidence, there is substantial evidence to support the finding that the switching was a part of the transportation service.

It is also contended by the appellant that the allowance will work an illegal discrimination. There is no evidence in the record, however, tending to support this contention.

It is finally contended that the order is void because the findings of the Commission defeat, instead of support, the allowance. We do not agree with appellant in this contention.

It is true that the Commissioner's order stated that it was not clear how much of the service was plant facil-

ity, etc. The Commission stated, however, that there was enough service which should properly be done by the carrier to amount to $2.50 per car, and the evidence of appellant's witnesses is to the effect that this is cheaper than the carrier itself could perform the services.

The Railroad Commission had jurisdiction; there is sufficient evidence to support its finding, and the judgment of the circuit court is affirmed.